Filed 12/30/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SANTA MONICA COLLEGE FACULTY ASSOCIATION et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> SANTA MONICA COMMUNITY COLLEGE DISTRICT, <br><br>     Defendant and Respondent. | B262360 <br><br> (Los Angeles County Super. Ct. No. SS024130; R/T 12CS1228) |

    APPEAL from a judgment of the Superior Court of Los Angeles County. Lisa Hart Cole, Judge. Reversed.

    Lawrence Rosenzweig, for Plaintiffs and Appellants.

    Robert J. Bezemek for California Federation of Teachers, California Community Colleges Independents Organization, and the Faculty Association of the California Community Colleges, as Amici Curiae on behalf of Plaintiffs and Appellants.

    Fagen Friedman & Fulfrost, Howard A. Friedman, Wesley King, and Stephanie S. Baril, for Defendant and Respondent.

Section 87665 of the Education Code empowers the governing board of a community college district to "terminate the employment of a temporary employee at its discretion" and its decision to do so is "not subject to judicial review except as to the time of termination." (Educ. Code, § 87665.)[1] Section 87482.9 requires a governing board, during "the collective bargaining process" with its faculty, to negotiate whether and how its part-time, temporary faculty "earn[] and retain[] [their] annual reappointment rights." (§ 87482.9.) Defendant-respondent Santa Monica Community College District (district) and its faculty entered into a collective bargaining agreement that grants part-time, temporary faculty who have taught at least five consecutive semesters a preferential re-employment status that can be revoked, as pertinent here, only upon "written notice" and, as reasonably interpreted by the arbitrators in this case, upon a showing that the faculty member was "guilty of misconduct" as defined in the Education Code.

The district revoked the preferential status of three part-time, temporary faculty and told them they would not be reemployed in the future. The district gave them written notice that they had engaged in misconduct, but during the arbitration that grew out of the grievances they filed, refused to produce any evidence to support its finding of misconduct on the ground that section 87665 made its effective termination of those faculty unreviewable.

This appeal therefore presents the following question: Is a community college district's authority to revoke a part-time, temporary faculty member's annual reappointment rights governed by section 87665 or instead by the terms of the collective bargaining agreement negotiated pursuant to section 87482.9? We conclude that section 87482.9 controls where, as here, a district elects to revoke a faculty member's reappointment right rather than terminate that faculty member. We accordingly reverse the trial court's order to the contrary, and reinstate the arbitrators' awards for all three faculty members.

---

[1] Unless otherwise indicated, all further statutory references are to the Education Code.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Facts

For several years prior to 2011, Gary Strathearn (Strathearn), Shane Moshiri (Moshiri) and Joel Druckman (Druckman) were part-time faculty at Santa Monica College (college), a public community college.  All three had taught at the college for more than five consecutive semesters with satisfactory evaluations.  This made them "associate faculty" under the collective bargaining agreement between the district and plaintiff-appellant Santa Monica College Faculty Association (faculty association).  Although the part-time, temporary faculty who attained associate faculty status were not guaranteed re-employment if the "need for assignments" they taught ceased, this status entitled them to re-employment as long as that "need" "continue[d]" and to preferential treatment in assignments over those part-time, temporary faculty who were not associate faculty.

The district received complaints of misconduct by Strathearn, Moshiri, and Druckman, and after investigation concluded that the complaints had merit.  Accordingly, in March 2011, the district sent letters informing them that their "Associate Faculty status w[ould] be terminated at the end of the Spring 2011 semester" and that "they w[ould] not receive additional teaching assignments from Santa Monica College."  Citing article 6.6.8 of the collective bargaining agreement, the letters further informed them that the district's "non-renewal of [their] temporary employment" was due to their "fail[ure] to perform the normal and reasonable duties of [their] assignment[s] and [because they] were guilty of misconduct as defined by Education Code section 87732."

### II.  Procedural History

The three teachers invoked their right under the collective bargaining agreement to file a grievance contesting the revocation of their associate faculty status because, in their view, they were not guilty of any qualifying misconduct.  The grievances proceeded to three separate arbitrators, with the faculty association representing each faculty member.  The parties stipulated to submit three issues to each arbitrator:  (1) whether the district "violat[ed] Article 6.6.8 . . . by the removal of [the instructors'] associate faculty status at

3

the end of the [] academic year"; (2) whether the "collective bargaining agreement require[d] anything more than notice to terminate . . . associate faculty [status]"; and (3) the appropriate remedy for any violation of the collective bargaining agreement. The district took the position that article 6.6.8 obligated the district only to give written notice of its decision to revoke associate faculty status, and not to prove up the actual misconduct that underlay that decision. Based on that position, the district presented no evidence before any arbitrator to substantiate its finding of misconduct as to any of the faculty members.

The arbitration in Strathearn's case was first. The arbitrator concluded that article 6.6.8's requirement that a part-time, temporary faculty member be "*guilty* of misconduct" implied a requirement that the district's finding of misconduct have some evidentiary basis, and that the district's refusal to present any evidence on this question dictated a ruling in Strathearn's favor. The arbitrators in Moshiri's and Druckman's cases followed this reasoning and also ruled for those faculty members. In each case, the arbitrator awarded reinstatement of associate faculty status retroactive to the date of removal as well as retroactive lost wages and benefits.

The district filed a petition to correct or vacate all three arbitration awards in the Los Angeles County Superior Court on April 17, 2012 and served that petition nine days later, on April 26, 2012. This petition was filed 99 days and served 108 days after a signed copy of Strathearn's arbitration award was served; filed 67 days and served 76 days after Moshiri's; and filed 36 days and served 45 days after Druckman's. The faculty association filed and served a petition to confirm all three awards on May 3, 2012. Forty-one days later, the district filed a memorandum of points and authorities that supported its motion to vacate and opposed the faculty association's petition to confirm. The district's and faculty association's petitions were filed as limited jurisdiction matters. The limited jurisdiction court confirmed all three arbitration awards, but the superior court's appellate division vacated those orders on the ground that they should not have been adjudicated in a limited jurisdiction court.

4

The district then moved to reclassify its petition to vacate as an unlimited jurisdiction matter. For its part, the faculty association filed and served a second petition to confirm the awards as an unlimited jurisdiction matter. The district filed a demurrer to the faculty association's petition on procedural grounds 30 days after being served with the second petition, and filed a response to the faculty association's second petition 92 days after being served.

The trial court granted the district's petition to vacate all three arbitration awards. The court determined that the arbitrators' conclusion that the collective bargaining agreement required the district to substantiate its conclusion that a part-time, temporary faculty member was "guilty of misconduct" before revoking that member's associate faculty status conflicted with section 87665's mandate that community college districts have unreviewable authority to terminate temporary community college faculty. Under *Board of Education v. Round Valley Teachers Association* (1996) 13 Cal.4th 269 (*Round Valley*), the court reasoned, section 87665 trumps and rendered incorrect the arbitrators' awards to the contrary.

The faculty association timely appealed.

## DISCUSSION

The faculty association urges three reasons why the trial court's ruling should be overturned; two are procedural, the last is substantive. We consider the procedural arguments first.

## I. Procedural Arguments

The faculty association argues that (1) the trial court lacked jurisdiction to vacate the arbitrator's award in Strathearn's case because the district missed the statutory deadlines for challenging that award, and (2) the court lacked the statutory authority to vacate or correct any of the arbitration awards because the arbitrators at worst committed an unreviewable error of law but did not "exceed[] their powers," which is the pertinent prerequisite for judicial review under Code of Civil Procedure section 1286.2, subdivision (a)(4). As the facts underlying each argument are undisputed or otherwise present questions of law, we consider each question de novo. (See *Richey v. AutoNation,*

*Inc.* (2015) 60 Cal.4th 909, 918, fn. 1 (*Richey*) [appellate court reviews de novo whether to vacate an arbitration award on basis that arbitrator exceeded his or her powers]; *Compulink Management Center, Inc. v. St. Paul Fire and Marine Ins. Co.* (2008) 169 Cal.App.4th 289, 295 (*Compulink*) [proper interpretation of a statute, and its application to undisputed facts, presents a question of law that is subject to de novo review].)

### A. Timeliness of District's Request to Vacate Strathearn's Award

As a general matter, a party seeking to vacate an arbitration award must either (1) file and serve a petition to vacate that award "not later than 100 days after the date of the service of a signed copy of the award" (Code Civ. Proc., § 1288; *Elden v. Superior Court* (1997) 53 Cal.App.4th 1497, 1511), or (2) file and serve a timely response (that is, within 10 days) to the other party's petition to confirm the award, which seeks to vacate the award (Code Civ. Proc., §§ 1285.2 & 1290.6; *Oaktree Capital Management, L.P. v. Bernard* (2010) 182 Cal.App.4th 60, 66 (*Oaktree*); *South Bay Radiology Medical Assocs. v. W.M. Asher, Inc.* (1990) 220 Cal.App.3d 1074, 1081 (*South Bay Radiology*).)  The filing and service deadline for a petition to vacate is jurisdictional; noncompliance deprives a court of the power to vacate an award unless the party has timely requested vacation in response to a petition to confirm.  (Code Civ. Proc., § 1286.4, subds. (a) & (b); *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1205-1208, 1210-1212 (*Abers*); *Oaktree*, at pp. 64-65.)

The district's efforts to vacate Strathearn's award did not comply with this general rule.  The district *filed* its petition to vacate that award 99 days after being served with the signed award in Strathearn's case, but the district did not *serve* its petition until 108 days after the award was served.  This was eight days late.  The district also challenged the award in Strathearn's case in its responses to the faculty association's first and second petitions to confirm that award, but all of its responses were untimely:  Under the rules for service and filing of a response under Code of Civil Procedure sections 1290.6 and 1013, subdivision (a), the district's response to the first petition to confirm was filed 25

6

days late (40 days after service of the petition by mail),[2] and the district's response to the second petition was filed 82 days late (92 days after personal service of the petition). Even if we construe the district's demurrer to the second petition as a "response," it was filed 20 days late (30 days after service). The trial court consequently lacked jurisdiction to vacate Strathearn's award.

The district offers three arguments in response. First, it contends that a trial court may excuse a late-filed petition to vacate an arbitration award under its general authority to relieve a party from its "mistake, inadvertence, surprise, or excusable neglect" under Code of Civil Procedure 473, subdivision (b). However, "section 473 cannot be relied upon to excuse a party's failure to comply with a jurisdictional statute of limitations" and thus cannot be used to relieve the district from its lapse in this case. (*Abers*, *supra*, 217 Cal.App.4th at pp. 1210-1212 [rejecting precisely this argument].)

Second, the district asserts that *United Firefighters of Los Angeles v. City of Los Angeles* (1991) 231 Cal.App.3d 1576 (*United Firefighters*) vests courts with some authority to disregard jurisdictional time limits for challenges of arbitration awards. To be sure, *Unified Firefighters* drew a distinction between petitions to vacate that "attack[] the authority of the trial court to compel [the objecting party] to submit the matter to arbitration" and petitions to vacate that attack "the correctness of the [arbitration] award," and held that the former are not subject to the jurisdictional time limits because they attack the legitimacy of the arbitration in the first place. (*Id.* at pp. 1581-1582.) But, as the parties' stipulation of submitted issues to be arbitrated in this case makes plain, the district's challenges were directed to whether the arbitrators' interpretation of the

---

**2**      The docket reflects the filing of a "Stipulation Re: Filing of Memorandum of Points and Authorities In Support of Motion to Vacate Or In The Alternative Correct" approximately a month after the faculty association filed its petition to confirm, but the record on appeal does not contain the stipulation itself or otherwise explain whether it extended the deadline for the district's response. Even if it did, and if the District's response was timely, the trial court erred in vacating Strathearn's arbitration award for the reasons explained in part II of our opinion.

7

collective bargaining agreement was correct, not whether the arbitration was permissible in the first place. *United Firefighters* and its exception do not apply here.

Lastly, the district argues that *South Bay Radiology*, *supra*, 220 Cal.App.3d 1074 empowers a trial court to entertain a challenge to an arbitration award based on the award's illegality, even when the challenging party blew the 100-day filing and service deadline. This is what *South Bay Radiology* says, but the court proceeded to hear the untimely challenge because the objecting party had raised that challenge in a timely response to a petition to confirm. (*South Bay Radiology*, *supra*, 220 Cal.App.3d at p. 1081.) We read *South Bay Radiology* as a restatement of the general rule set forth above. We decline to construe *South Bay Radiology* as authorizing judicial review of untimely challenges to arbitration awards whenever those challengers assert that the award contravenes a statute; to do so would create an exception that would swallow the general rule hinging jurisdiction on the timeliness of the challenge.

Consequently, we conclude that the trial court lacked jurisdiction to entertain the district's challenge to the arbitration award in Strathearn's case. We vacate the court's order overturning that award.

### B.    *Propriety of Judicial Review*

The California Arbitration Act (CAA), Code of Civil Procedure section 1280 et seq., limits the power of trial courts to vacate arbitration awards. Arbitration awards may be vacated in only one of six statutorily enumerated circumstances. (Code Civ. Proc., § 1286.2.) Only one of those circumstances is implicated in this case—namely, the court's power to vacate an arbitration award when "the arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."[3] (*Id.*, subd. (a)(4).) An arbitrator does not exceed his or her

---

[3]    Where a trial court concludes that an arbitrator has "exceed[ed] [his or her] powers," but that the award *can* be corrected without affecting the merits of the decision, the court may "correct" (rather than "vacate") that award. (Code Civ. Proc., § 1286.6, subd. (b).)

8

powers by making a wrong decision; this is why courts will generally not "review the validity of an arbitrator's reasoning" or review "'for errors of fact or law,'" even when the error "'appears on the face of the award and causes substantial injustice to the parties.'" (*SingerLewak LLP v. Gantman* (2015) 241 Cal.App.4th 610, 616, quoting *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6, 10.)

This principle limits judicial review, but does not invariably preclude it. An arbitrator "may exceed [his or her] powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey*, *supra*, 60 Cal.4th at p. 916.) In *Round Valley*, *supra*, 13 Cal.4th 269 for instance, our Supreme Court ruled that a school district's claim that an arbitration award pursuant to a collective bargaining agreement conflicted with a provision of the Education Code presented a question implicating the district's statutory rights and thus the possibility that the arbitrator exceeded his powers. (*Id.* at p. 276.) "[I]f," as in *Round Valley*, "the District is correct concerning the scope of its statutory rights" to terminate temporary community college faculty without cause, then "this case [also] presents the exceptional circumstance that allows for judicial review of the arbitrator's decision." (*Id.* at p. 277.)

We now turn to the merits of the faculty association's challenge to the trial court's vacation of the arbitration awards.

## II.    The Merits

The faculty association argues that the trial court erred in evaluating the propriety of the district's actions against the three part-time, temporary faculty members under section 87665 rather than section 87482.9 and the terms of the collective bargaining agreement. The district argues that we can avoid this issue if we conclude that the arbitrators erred in construing the collective bargaining agreement to require evidence of misconduct, as it is this requirement that conflicts with section 87665. Alternatively, the district argues that, even if the arbitrators' construction is viable, section 87665 controls. Because it would be dispositive, we will first address the district's challenge to the arbitrators' construction of the collective bargaining agreement. However, we will start

9

with a brief overview of the pertinent statutes governing community college districts'
relations with their faculty and with the pertinent provisions of the collective bargaining
agreement between the district and the faculty association in this case.

### A.     *Background*

#### 1.       **Statutory scheme**

Our Legislature has enacted statutes governing the relationship between
community college districts and their faculty.[4] (§ 87400 et seq.) These statutes establish
three types of community college faculty: (1) "regular" (or "tenured") employees;
(2) "contract" (or "probationary") employees; and (3) "temporary" employees.
(§§ 87604 & 87661, subds. (b) & (d); see generally *Stryker v. Antelope Valley
Community College Dist.* (2002) 100 Cal.App.4th 324, 329-330 (*Stryker*).) Regular
employees are a community college's permanent faculty members. (§§ 87601, subd. (e),
87608, subd. (c), 87609, 87661, subd. (d).) Contract employees are faculty in their first
few years of academic employment; in time, and with satisfactory evaluations, they may
become regular employees. (§§ 87601, subd. (b), 87605, 87608, subd. (b), 87608.5,
87477.) Temporary employees fall into two categories: (1) faculty hired for a limited
duration to meet certain, specified teaching needs (§§ 87478 [temporary faculty
employed to fill positions held by absent regular employees], 87481 [same], 87480
[temporary faculty hired to teach fewer than three months], 87482 [temporary faculty
hired to respond to unexpectedly high student enrollment]); and (2) part-time faculty who
work "not more than 67 percent of the hours per week considered a full-time assignment
for regular employees having comparable duties" (§ 87482.5, subd. (a); see
*Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977,
982-983). (We note that regular employees can also work part-time, but they are still
considered "regular" employees, not "temporary" employees. [§§ 87612 & 87483].)

---

[4]     Different statutes govern the relationship between school districts and faculty who
teach kindergarten through 12th grades. (See § 44830 et seq.)

The different categories of community college faculty enjoy different degrees of statutory protection. Regular and contract employees may be "dismissed" only for "cause" as that term is defined in section 87332 and only after notice and a hearing. (§§ 87667, 87332, 87743, 87737.)[5] Regular and contract employees may additionally be "deprived of [their] position," following notice and a hearing, if student enrollment necessitates a "decrease in the number of [regular] employees," and in that situation, regular employees have seniority over contract employees in keeping their jobs. (§§ 87743, 87740, 87672; see also *California Teachers Assn. v. Butte Community College Dist.* (1996) 48 Cal.App.4th 1293, 1300.)

Temporary employees have the least protection. Since 1977, section 87665 has provided that "[t]he governing board may terminate the employment of a temporary employee at its discretion at the end of a day or week, whichever is appropriate. The decision to terminate the employment is not subject to judicial review except as to the time of termination." (§ 87665.) Admittedly, this provision appears at first blush to conflict with the dismissal-only-for-cause requirement of section 87732 because section 87732 applies to "regular employee[s]" and "academic employee[s]" (§ 87732) and

---

[5] "Cause" is defined in section 87732 as:
  (a) Immoral or unprofessional conduct.
  (b) Dishonesty.
  (c) Unsatisfactory performance.
  (d) Evident unfitness for service.
  (e) Physical or mental condition that makes him or her unfit to instruct or associate with students.
  (f) Persistent violation of, or refusal to obey, the school laws of the state or reasonable regulations prescribed for the government of the community colleges by the board of governors or by the governing board of the community college district employing him or her.
  (g) Conviction of a felony or of any crime involving moral turpitude.
  (h) Conduct specified in Section 1028 of the Government Code [that is, belonging to the Communist Party or any other organization that advocates the overthrow of the government]."
 (§ 87732.)

11

"academic employees" ostensibly include all types of faculty (including temporary employees) (§§ 87604 ["[t]he governing board of a community college district shall employ each academic employee as a contract employee, regular employee, or temporary employee"], 87001, subds. (a) & (b) [defining "academic employee" as "a person employed by a community college district in an academic position," which "includes every type of service . . . for which minimum qualifications have been established by the board of governors"].)  However, courts have long treated section 87665's more specific provisions governing temporary faculty as controlling.  (See *Stryker*, *supra*, 100 Cal.App.4th at pp. 329-330 ["(w)hile a community college may terminate a temporary employee at its discretion (§ 87665), a contract or regular employee may be terminated only for statutorily specified cause (§ 87332) . . ."]; *Theiler v. Ventura County Community College Dist.* (2011) 198 Cal.App.4th 852, 855, 858 [same].)  This precedent accords with the long-standing canon of statutory construction that the more specific statute controls.  (E.g., *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1208.)  Thus, section 87665 governs the termination of a community college district's temporary faculty.  (As an aside, we note that the terms "termination," "dismissal," and "deprived of [his or her] position" have been construed to be synonymous.  [*Thompson v. Modesto City High School Dist.* (1977) 19 Cal.3d 620, 627 ("it is clear that 'deprived of his position' refers to dismissal or termination of services")].)

In 2001, the Legislature added section 87482.9, which makes "[t]he issue of earning and retaining of annual reappointment rights . . . a mandatory subject of negotiation with respect to the collective bargaining process" as to "temporary [and] part-time faculty." (§ 87482.9.)

### 2. Collective bargaining agreement between the district and the faculty association

At the time pertinent to this litigation and pursuant to the mandate of section 87482.9, the collective bargaining agreement between the district and the faculty association granted associate faculty status to part-time, temporary faculty who had worked for five consecutive semesters with satisfactory evaluations.  This status

conferred three rights: (1) the right to be "re-employed" for both the Fall and Spring semesters as long as "the need for the assignments for which the associate faculty member is qualified continues"; (2) the right to preferential assignments based on seniority vis-à-vis other associate faculty and to priority generally over part-time faculty who do not have associate faculty status; and (3) under article 6.6.8, the right to renewal of associate faculty status unless "it is terminated pursuant to" one of four circumstances: "(a) [t]he associate faculty member receives an evaluation that is less than satisfactory"; "(b) [t]he associate faculty member fails to perform the normal and reasonable duties of his/her assignment or is otherwise guilty of misconduct as defined by Education Code 87332"; "(c) [t]he associate faculty member declines all of his/her assignment in the discipline"; or "(d) [a]ssociate faculty status has not been renewed for two Fall/Spring cycles." "Before termination of Associate Faculty status," article 6.6.8 guarantees that "the associate faulty member shall be given written notice of the reason for such termination."

## B.     *Analysis*

### 1.     **Arbitrators' construction of article 6.6.8**

Consistent with the narrow scope of judicial review of arbitration awards described above, the trial court's review—and, consequently, our review—of the arbitrators' construction of the collective bargaining agreement is circumscribed. "A trial court may vacate an award interpreting a contract if and only if it 'rests on a "completely irrational" construction of the contract [citations] or . . . amounts to an "arbitrary remaking" of the contract.'" (*California Dept. of Human Resources v. Service Employees* (2012) 209 Cal.App.4th 1420, 1430 (*California Dept. of Human Resources*), quoting *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376-377.) This principle applies to an arbitrator's construction of a collective bargaining agreement. (See *Social Services Union v. Alameda County Training and Employment* (1989) 207 Cal.App.3d 1458, 1463 ["'(a) court must affirm an arbitrator's award if it can in any rational way be derived from the (collective bargaining) agreement, and can only reverse

if there is a manifest disregard of the agreement, totally unsupported by principles of contract construction . . .' (citation)"].)

Article 6.6.8 explicitly provides that, "[b]efore termination of Associate Faculty status, the associate faculty member shall be given written notice of the reason for such termination." The district contends that this is the sole requirement. The arbitrators found that article 6.6.8 also obligates the district, at least when revoking associate faculty status for being "otherwise guilty of misconduct," to provide some evidence to substantiate the existence of that misconduct. This interpretation is not "completely irrational." (*California Dept. of Human Resources*, *supra*, 209 Cal.App.4th at p. 1430.) "*Guilty* of misconduct" connotes a finding that misconduct actually occurred; otherwise, it would be no different than a "*suspicion* of misconduct." In *Supreme Lodge of the World, L.O.M. v. Los Angeles No. 386, L.O.M.* (1917) 177 Cal. 132, 137, our Supreme Court held that an organization's charter requiring a "finding . . . that [a chapter] was guilty of violating some provision of the [organization's] Constitution, general laws, rules, and regulations" "implies a hearing." (*Ibid.*) The arbitrators' interpretation that the collective bargaining agreement's use of the term "guilty" requires the same is not irrational. We will therefore not disturb it.

## 2. Conflict between section 87665 and section 87482.9 as interpreted by the collective bargaining agreement

Analytically, whether a community college district's authority to "terminate the employment" of temporary employees under section 87665 supersedes or is instead subordinate to that district's obligation to follow the provisions of a collective bargaining agreement it negotiated pursuant to section 87482.9 governing part-time, temporary faculty members' "earning and retaining of annual reappointment rights" turns on two questions: (1) do sections 87665 and 87482.9 irreconcilably conflict; and (2) if they do, which statute controls? The trial court concluded that they did conflict, and that section 87665 controls. These are both questions of statutory construction that we review de novo. (*Compulink*, *supra*, 169 Cal.App.4th at p. 295.) We disagree with the court's resolution of both questions.

14

As to the first question, we are guided by two principles of statutory construction. First, "'[a] court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.]'" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805.) Second, all "'"'presumptions are against a repeal by implication'"'" (*ibid.*), including partial repeals that occur when one statute implicitly limits another statute's scope of operation (*Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 573). Thus, "'"'we will find an implied repeal "only when there is no rational basis for harmonizing . . . two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.'"'"'" (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838.)

The district argues that sections 87665 and 87482.9 are irreconcilable because a community college district that under section 87482.9 signs a collective bargaining agreement granting part-time, temporary faculty rights to reappointment except upon a showing of "cause" has effectively negated its statutory right under section 87665 to terminate such faculty without cause. Put differently, a district's statutory right under section 87665 to terminate temporary faculty without cause cannot sit comfortably alongside a right of the district to negotiate away that right.

The implicit premise of this argument is that the termination of employment and the revocation of reappointment rights are the same thing. They are not. To be sure, the revocation of reappointment rights can, as it did here, effectively result in a part-time, temporary employee's loss of employment. But the California courts have repeatedly declined to treat them as synonymous; to the contrary, the courts have distinguished between them and recognized that they may have different procedures and still peaceably co-exist. In *Round Valley*, *supra*, 13 Cal.4th 269, our Supreme Court, in the context of K-12 teachers, expressly rejected "the notion that the term 'dismissal' historically encompasses procedures for a decision against re-election [that is, the reappointment of probationary faculty]." (*Id.* at p. 283.) Along the same lines, the court in *Sunnyvale*

15

*Unified School Dist. v. Jacobs* (2009) 171 Cal.App.4th 168 (*Sunnyvale*) held that "'nonreelection' [of probationary K-12 teachers for employment in the ensuing school year] is different from 'dismissal,' which is the term used when a probationary teacher is terminated during the school year for unsatisfactory performance [citation] or when permanent employees are terminated for cause [citation] . . . ." (*Id.* at p. 176.) As it did with K-12 probationary teachers, our Legislature enacted separate statutes governing the *dismissal* of temporary faculty at community colleges and the *reappointment* of part-time, temporary faculty at community colleges. As did the courts in *Round Valley* and *Sunnyvale*, we must also honor this distinction and reject the district's entreaty to conflate the two concepts and thereby create a conflict between the two statutes governing these two distinct personnel actions.

Even if we were to conclude that the two statutes *did* conflict (and thus were to reach the second question), we disagree with the district that section 87665 would trump section 87482.9. The argument favoring section 87665 seems to rest on the notion that a district's greater power to terminate necessarily includes the lesser power to revoke reappointment rights. (See generally Civ. Code, § 3536 ["[t]he greater contains the less"].) When it comes to construing statutes, however, two more pertinent canons are controlling: "'If conflicting statutes cannot be reconciled, later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones [citation]' . . . [and] when the[] two rules are in conflict, the rule that specific provisions take precedence over more general ones trumps the rule that later-enact statutes have precedence." (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960.) As applied here, both canons point to section 87482.9 having precedence. Section 87665 was enacted in 1977; section 87482.9 was enacted 24 years later in 2001. Section 87665 covers the termination of "temporary" faculty at a community college, while section 87482.9 addresses the more specific rights of part-time, temporary faculty to annual reappointment. Because section 87482.9 is both the later-enacted and more specific statute, it would prevail in any conflict with section 87665.

16

Because we can harmonize sections 87482.9 and 87665 (and, alternatively, because section 87482.9 would control even if harmonization were impossible), the district was obligated to adhere to the requirements it negotiated in the collective bargaining agreement pursuant to section 87482.9. Because it did not produce any evidence to substantiate its findings that Strathern, Moshiri, and Druckman were "guilty of misconduct," as the arbitrators reasonably construed article 6.6.8 to require. Reversal of the trial court's order vacating the arbitration awards is warranted.

The district offers four arguments in response. First, it argues that *Round Valley*, *supra*, 13 Cal.4th 269 dictates a ruling in its favor. We disagree. In *Round Valley*, the court confronted a conflict between a collective bargaining agreement provision requiring a finding of "just cause" before a school district could refuse to re-elect a probationary K-12 teacher to teach the next year, and section 44929.21, subdivision (b), which gave a district plenary power to decide whom to re-elect. (*Round Valley*, at pp. 272-273.) The collective bargaining provision had been negotiated pursuant to the Educational Employment Relations Act (EERA), Government Code section 3540 et seq., which required bargaining as to "matters relating to wages, hours of employment, and other terms and conditions of employment" (Gov. Code., § 3543.2, subd. (a)). Notably, the EERA did not specifically require negotiation of the re-election rights of probationary employees. (*Round Valley*, at p. 280.) The court in *Round Valley* concluded that the Education Code statute directly conflicted with—and trumped—the collective bargaining agreement provision to the contrary because the EERA did not specifically provide for negotiation of re-election rights and because the EERA expressly defers to the Education Code (Gov. Code, § 3540 [EERA "shall not supersede other provisions of the Education Code . . ."]). (Accord, *Sunnyvale*, *supra*, 171 Cal.App.4th at p. 173 [following *Round Valley* where similar conflict arose between an Education Code statute and a provision negotiated under the EERA].) Here, by contrast, we are dealing with two co-equal provisions of the Education Code that deal with different rights (termination versus reappointment); what is more, the Education Code specifically dictates negotiation during

17

collective bargaining on the topic alleged to conflict with another Education Code statute. *Round Valley* is distinguishable.

Second, the district argues that our interpretation leads to two results it contends are absurd, and that we must accordingly construe the statutes to avoid these absurd results. (See *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037 [statutory interpretations that lead to absurd results or render words surplusage are to be avoided].) To begin, the district asserts that allowing community college districts to confer greater reappointment rights on part-time, temporary faculty interferes with those districts' flexibility in responding to fluctuating student enrollment. We perceive no diminution in flexibility. A district at all times retains the power to negotiate such flexibility into its collective bargaining agreement, as the district did here; a district also retains the power to terminate the part-time, temporary faculty (rather than revoke any preferential reappointment status earned under the terms of the negotiated collective bargaining agreement). What a district may not do is "mix and match" by revoking a faculty member's status conferring a right to reappointment without following the terms of collective bargaining agreement that the district negotiated on that very topic. Further, the district argues that our holding makes it possible for the reappointment rights of part-time temporary faculty to be different in each of the 72 community college districts in the state. This is true, but the possibility of such a patchwork is a function of our Legislature's enactment of section 87482.9. It is not our place to gainsay the Legislature's judgment on which policies are better for the state; those policy decisions rest initially—and solely—with the Legislature. (*Hagman v. Meher Mount Corp.* (2013) 215 Cal.App.4th 82, 89 ["we must defer to the Legislature's judgment on which . . . policies to adopt"].)

Third, the district argues that section 87665 trumps section 87482.9 by virtue of section 87622. Section 87622 provides that "[t]he employment, rights, responsibilities, dismissal, imposition of penalties for persons employed by a community college district in faculty positions shall be governed by Article 2 . . . and Article 4. . [of Chapter 3 of the Education Code]," and this command "shall take precedence . . . over any other act

18

enacted by the Legislature . . . which, explicitly or implicitly, would result in community college faculty being governed by provisions inconsistent with this act." (§ 87622.) As the district notes, section 87665 is within article 4, while section 87482.9 is within article 1. Consequently, the district reasons, section 87665 "take[s] precedence" over the "inconsistent" section 87482.9. However, as we discuss above, the mandatory negotiation duties set forth in section 87482.9 are distinct from—and thus, not "inconsistent" with—a community college district's power to dismiss without cause.

Lastly, and somewhat at odds with the prior argument, the district contends that sections 87665 and 87482.9 are *not* inconsistent and can be harmonized by reading section 87482.9 narrowly to mandate collective bargaining as to "class-load assignments," but not as to the creation of procedural rights attendant to "annual reappointment rights"; such a reading, the district asserts, means that section 87665—and section 87665 alone—governs the procedural protections of temporary employees (and grants them no protection). We reject this argument because it directly conflicts with the plain language of section 87482.9, which makes "[t]he issue of earning and retaining of annual reappointment rights . . . a mandatory subject of negotiation" and does so without the qualification the district now urges. Because we are not at liberty to rewrite a statute (*Apple Inc v. Superior Court* (2013) 56 Cal.4th 128, 158), we must reject the district's entreaty that we do so.

## DISPOSITION

The judgment is reversed. The faculty association is entitled to costs on appeal.

**<u>CERTIFIED FOR PUBLICATION.</u>**

_____, J.
    HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
ASHMANN-GERST

19