Filed 10/27/23 Law Finance Group v. Key CA2/2
Opinion on remand from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LAW FINANCE GROUP, LLC,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>SARAH PLOTT KEY,<br><br>　　Defendant and Respondent. | B305790<br><br>(Los Angeles County<br>Super. Ct. No. 19STCP04251) |

　　APPEAL from an order of the Superior Court of Los Angeles County. Rafael A. Ongkeko, Judge. Affirmed.

　　Frost, Christopher L. Frost; Greines, Martin, Stein & Richland, Cynthia E. Tobisman and Alana H. Rotter for Plaintiff and Appellant.

　　Grignon Law Firm, Margaret M. Grignon and Anne M. Grignon for Defendant and Respondent.

_____

We consider this appeal again on remand from our Supreme Court. In our original opinion, we reversed the trial court's order vacating an arbitration award and directed the trial court to confirm the award. (*Law Finance Group, LLC v. Key* (2021) 67 Cal.App.5th 307, 325 (*Law Finance Group I*).) We concluded that respondent Sarah Plott Key was untimely in seeking to vacate the award under Code of Civil Procedure section 1288.2.[1] (*Id.* at p. 318.) We held that: (1) to make a timely request to vacate an arbitration award under section 1288.2, a response to a petition to confirm the award must be filed within 100 days of service of the award, even if the petition to confirm itself is filed within 100 days; (2) the 100-day deadline under section 1288.2 is jurisdictional; and (3) Key's tardy response to appellant Law Finance Group, LLC's petition to confirm could not be excused by the doctrines of equitable estoppel or equitable tolling.[2] (*Id.* at pp. 321–322.)

Our Supreme Court agreed with us on the first point. The court rejected Key's argument that her request to vacate the arbitration award was timely because she complied with the time for filing a response to Lender's petition to confirm the award under section 1290.6. (*Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 946 (*Law Finance Group II*).) Consistent with our prior opinion, our Supreme Court concluded that section 1290.6 does not supersede the 100-day requirement in section 1288.2. Rather, both statutes should be read together to require

___

[1] Further undesignated statutory references are to the Code of Civil Procedure.

[2] We follow our Supreme Court's lead in referring to Law Finance Group, LLC as "Lender" in this opinion.

compliance with the time limits in each section. (*Id.* at pp. 946–947.)

However, the court reversed our other two holdings. The court concluded that the 100-day deadline under section 1288.2 is not jurisdictional. (*Law Finance Group II*, *supra,* 14 Cal.5th at pp. 946–949, 952–953.) The court further held that nothing in the statutory language or policy underlying section 1288.2 demonstrates that the Legislature intended to preclude the courts from "applying traditional principles of equity to section 1288.2's statutory deadline." (*Id.* at p. 956.) Thus, section 1288.2 is "subject to both equitable tolling and claims of equitable estoppel." (*Ibid.*) In light of that holding, the court remanded for us to "determine in the first instance whether equitable considerations should excuse Key's failure to comply with the statutory deadline." (*Id.* at p. 960.)

We now conclude that the doctrine of equitable tolling applies to excuse Key's tardy filing. We also affirm the trial court's ruling vacating the arbitrators' award on the ground that the award violated Key's unwaivable statutory rights and contravened an express public policy governing consumer loans.

We reject Lender's argument that, in reaching this decision, the trial court should have reviewed de novo whether Lender's loan to Key was a consumer loan. The principle that trial courts need not defer to arbitrators' findings when such deference would contravene public policy does not apply here. In any event, Lender never asked the trial court to engage in such a de novo review and therefore forfeited its argument on appeal. We therefore affirm.

# BACKGROUND

We only briefly summarize the background facts, which are discussed in more detail in *Law Finance Group I* and *Law Finance Group II*.

## 1.    The Loan

Key filed a probate action against her sister, Elizabeth Plott Tyler, claiming that Tyler had procured an amendment to a trust through undue influence over the sisters' mother. (*Law Finance Group II, supra,* 14 Cal.5th at p. 942.)  When Key's money ran short, she obtained a $2.4 million loan from Lender to finance the probate litigation (the Loan). (*Ibid.*)  Lender provided the Loan pursuant to a contract (Contract) that included the obligation for Key to pay interest in the amount of 1.53 percent per month, compounded monthly, along with various fees.  (*Ibid.*)

Key prevailed in the probate action and repaid the principal amount of the Loan to Lender.  (*Law Finance Group II, supra,* 14 Cal.5th at p. 942.)  However, she claimed that the interest and fees were unlawful under the California Financing Law (CFL).  (Fin. Code, § 22000 et seq.)

## 2.    The Arbitration

Pursuant to the Contract's arbitration provision, the parties arbitrated the dispute over interest and fees.  (*Law Finance Group II, supra,* 14 Cal.5th at p. 943.)  The arbitrators found that the Loan was a consumer loan and, based on that finding, ruled that the compound interest and fee provisions in the Contract were therefore unlawful under the CFL.  (*Ibid.*)  However, the arbitrators also awarded Lender damages consisting of simple interest on the Loan, plus an additional amount for default interest.  The award amounted to about $800,000 in damages, plus attorney fees and costs and the

4

expenses of the arbitration. (*Ibid.*) The arbitrators served their final award on September 19, 2019. (*Ibid.*)

### 3. Court Proceedings

On October 1, 2019, Lender filed a petition to confirm the arbitration award. (*Law Finance Group II, supra,* 14 Cal.5th at p. 943.)

On October 10, 2019, attorneys for Key and Lender discussed procedural issues concerning the petition. (*Law Finance Group II, supra,* 14 Cal.5th at p. 943.) In that call, Key's attorneys disclosed that Key intended to file a petition to vacate the arbitration award. (*Ibid.*) The attorneys agreed that the 10-day period under section 1290.6 for Key to respond to Lender's petition "will not apply." (*Id.* at p. 944.) They also agreed that Key would file a peremptory challenge to the judge who had been assigned to hear the petition and would waive personal service of the petition. In return, Lender's attorneys agreed to cooperate in setting up a joint briefing schedule on the parties' dueling petitions, working backward from an agreed hearing date that would be set with the new judge. (*Ibid.*)

After additional communications and the disqualification of another trial judge, the parties eventually agreed on a hearing date of February 20, 2020. They further discussed and agreed upon the details of filing and serving the petitions. On January 27, 2020, 130 days after the arbitrators had served their award, Key filed her petition to vacate the award. Nine days later, on February 5, 2020, Key filed her response to Lender's petition. Her response requested an order vacating the award. (*Law Finance Group II, supra,* 14 Cal.5th at p. 944.)

In her filings, Key argued that the arbitrators had exceeded their authority by awarding damages after finding that the Loan

5

was a consumer loan. Key claimed that, under Finance Code section 22750, the arbitrators should have declared the Loan void—and, as a result, not awarded *any* damages—because Lender had attempted to charge unlawful compound interest and fees on a consumer loan. (*Law Finance Group II, supra,* 14 Cal.5th at p. 944.)

Lender's response to Key's petition to vacate argued that Key's petition was untimely because it failed to meet the 100-day deadline for such a petition under section 1288. (*Law Finance Group II, supra,* 14 Cal.5th at p. 944.) The trial court agreed, but found that Key's request to vacate the arbitration award in her response to Lender's petition was timely under section 1290.6, presumably because the parties had agreed to waive the 10-day response period. (*Ibid.*) The trial court's order also stated that, "If there is a need to extend the time to the actual filing date to enable the court to decide the petition on its merits, the court finds good cause to grant such an extension."

On the merits, the trial court granted Key's request to vacate the arbitration award. The court concluded that the arbitrators' award violated Key's unwaivable statutory rights and contravened an explicit legislative expression of public policy in the CFL by failing to find the Contract void after making findings that the Contract's interest and fee provisions were unlawful. (*Law Finance Group II, supra,* 14 Cal.5th at pp. 944–945.)

**DISCUSSION**

## 1.    Standard of Review

This court reviews de novo the trial court's ruling on a motion to confirm an arbitration award, except that the substantial evidence standard applies "[t]o the extent that the trial court's ruling rests upon a determination of disputed factual

issues." (*Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 892, fn. 7 (*Lindenstadt*).)

Here, the trial court made no factual findings concerning Key's estoppel arguments. It was unnecessary for the court to do so because the court accepted Key's argument—subsequently rejected by both this court and our Supreme Court—that the time period to file a response to a petition to confirm under section 1290.6 supersedes the 100-day requirement in section 1288.2.

The trial court stated that it had reviewed the evidence of the parties' communications leading up to the hearing, and that based on that evidence, "the court finds Key's response is timely under [section] 1290.6 and should be considered on its merits." As mentioned, the court also added that it found "good cause" to grant an extension if one was necessary to enable the court to reach the merits.

This good cause finding apparently referred to the portion of section 1290.6 that permits the trial court to order an extension of the time to file a response to a petition to confirm "for good cause." (§ 1290.6.) At most, we can infer from this finding that the trial court identified no bad faith that would have made an extension of the deadline unfair to any party. The finding did not directly concern any issue of equitable relief. Thus, the finding did not include any determination of disputed facts to which we must defer under the substantial evidence standard of review.

In any event, the evidence of the timing and the content of the parties' communications leading up to Key's filing of her request to vacate is essentially undisputed. Whether equitable tolling should apply is therefore an issue of law that we decide independently. (See *Singh v. Allstate Ins. Co.* (1998) 63

Cal.App.4th 135, 139–140 [court reviewed the application of equitable tolling independently as an issue of law where the "key facts which would affect the application of equitable tolling are undisputed"].)

We review de novo the trial court's decision to vacate the arbitrators' award on the ground that the arbitrators exceeded their powers. (*Santa Monica College Faculty Assn. v. Santa Monica Community College Dist.* (2015) 243 Cal.App.4th 538, 544.)

## 2. The Doctrine of Equitable Tolling Excuses Key's Late Filing

As its name suggests, the doctrine of equitable tolling is based on the inherent equitable power of the courts to " 'soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.' " (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 719 (*Saint Francis I*), quoting *Addison v. State of California* (1978) 21 Cal.3d 313, 316 (*Addison*).) The doctrine applies when three elements are present: " '[(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff.' " (*Saint Francis I*, at p. 724, quoting *Addison* at p. 319.) Although the doctrine is often applied in cases where a plaintiff pursues one legal remedy which causes it to miss the statute of limitations on another, the doctrine is not limited to that factual scenario. (*Saint Francis I*, at p. 725.) Rather, to determine if the doctrine applies, courts must "analyze whether a plaintiff has established the doctrine's three elements." (*Id.* at pp. 725–726.)

The first two elements are clearly present here. Key provided timely notice of her intent to seek an order vacating the

8

arbitration award.  Less than a month after the arbitrators had served their final award, Key told Lender's counsel that she intended to petition to vacate the award.  The parties thereafter coordinated the timing of a hearing on both Lender's petition to confirm and Key's petition to vacate.  Thus, Lender knew well within the 100-day deadline that Key intended to seek an order vacating the award.

Lender also was not prejudiced by Key's filing of her request to vacate 39 days after the 100-day deadline.  The timing was the result of cooperative conduct between the parties to schedule a mutually convenient date for the hearing on both the petition to confirm and the request to vacate within the constraints of available court dates.  Lender in fact received tangible benefits from this cooperation, including an agreement by Key's counsel to accept service of Lender's petition to confirm and to file an affidavit disqualifying the first judge who had been assigned to the matter.

The third element—reasonable and good faith conduct— "encompass[es] two distinct requirements:  A plaintiff's conduct must be objectively reasonable and subjectively in good faith." (*Saint Francis I, supra,* 9 Cal.5th at p. 729.)  With respect to the second requirement, there is no evidence here that Key acted in bad faith.  She did not obtain any litigation advantage from the delay in filing her request to vacate the arbitration award, other than the shared benefit of mutually agreeable hearing and filing dates.

The more difficult issue is whether Key acted *reasonably* in failing to meet the 100-day deadline under section 1288.2.  The test is objective.  (*Saint Francis I, supra,* 9 Cal.5th at p. 729.)  To determine whether Key's conduct was reasonable, we must decide

whether her actions were "fair, proper, and sensible in light of the circumstances." (*Ibid*.)

In our prior opinion, we concluded that Key could not reasonably have relied on any agreement by Lender to extend the 100-day deadline under section 1288.2 for two reasons. First, unlike section 1290.6, section 1288.2 does not contain a provision permitting the parties to extend the filing deadline "by an agreement in writing between the parties." (§ 1290.6; see *Law Finance Group I, supra,* 67 Cal.App.5th at p. 317.) Second, we noted the numerous cases that had treated the 100-day deadline to file a petition to vacate under section 1288 as jurisdictional. (*Law Finance Group I*, at p. 322.) We cited the legal principle that attorneys are charged with knowledge of the law, and concluded that, while Key "might have been misled about [Lender's] *intention* to waive the 100-day deadline," Key "could not have reasonably believed that [Lender] had the legal *authority* to do so." (*Id*. at p. 324.)

Our Supreme Court's opinion in *Law Finance Group II* negates the second of these reasons. The court has now explained that the time deadline in section 1288.2 is not jurisdictional, and that the deadline may be extended through operation of equitable principles. In light of that holding, our analysis of Key's conduct necessarily changes.

Even if the parties did not have authority under section 1288.2 to extend the 100-day filing deadline by stipulation (as they had under section 1290.6 to extend the 10-day response time), in light of the cooperation between the parties in arranging hearing and filing dates on both the petition to confirm and the request to vacate Key could reasonably have believed that Lender at least did not intend to raise a timeliness objection to her

10

filings.[3]  And, of critical importance for our current analysis, our Supreme Court's conclusion that the filing deadline in section 1288.2 is not jurisdictional means that Key could reasonably rely on that belief.  Because the law did not preclude Lender from waiving the deadline, the principle that Key's counsel was charged with knowledge of the law does not undermine the reasonableness of her reliance.  Had Lender not raised a timeliness objection to Key's request to vacate, it could have waived or forfeited any such objection.[4]

In this respect, the facts in this case are distinguishable from those at issue in *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2021) 59 Cal.App.5th 965, 969 (*Saint Francis II*), which Lender cites.  In that case, as here, the Court of Appeal considered the applicability of equitable tolling on remand from our Supreme Court.  The Supreme Court had held

---

[3] There is no indication in the record that Key expected such an objection.  Indeed, had she anticipated a timeliness objection, she presumably would have filed her petition to vacate earlier.

[4] The conceptual difference between waiver and forfeiture is not important in this context.  (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 ["the correct legal term for the loss of a right based on failure to timely assert it is 'forfeiture,' because a person who fails to preserve a claim forfeits that claim"].)  A defense based upon a statute that is not jurisdictional in nature may be waived or forfeited.  (See *Law Finance Group II, supra,* 14 Cal.5th at p. 950; *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 342 [whereas noncompliance with a *jurisdictional* rule "cannot be excused or forfeited," a party can forfeit its noncompliance with a rule that is merely mandatory "by failing to object"].)

11

that equitable tolling could apply to the time for filing a petition for a writ of administrative mandamus and remanded for the Court of Appeal to consider whether the facts warranted applying the doctrine in that case. (See *Saint Francis I, supra,* 9 Cal.5th at pp. 730–731.)

On remand, the Court of Appeal held that equitable tolling did not apply. The court concluded that the party who had missed the filing deadline did not meet the reasonable conduct requirement because the "plain terms of the relevant statutes" showed that the statutory time period for filing a petition for a writ of administrative mandate began to run as soon as the agency issued its decision stating that the decision was "effective immediately." (*Saint Francis II*, *supra*, 59 Cal.App.5th at p. 976.) The court reasoned that "it is not objectively reasonable for an attorney to miss a deadline to file a petition due to a failure to appreciate easily ascertainable legal principles." (*Id.* at p. 969.)

That same reasoning applies here to the extent that Key mistakenly believed that timely compliance with the response period under section 1290.6 meant that the 100-day requirement under section 1288.2 was inapplicable. Both this court and our Supreme Court have rejected that legal proposition based on established principles of statutory interpretation. But, as our Supreme Court has now held, the law did not preclude Lender from waiving or forfeiting the 100-day deadline under section 1288.2. Based upon the parties' communications, Key could reasonably expect that Lender would not object to her filings as untimely. Absent such an objection, Lender would have forfeited its timeliness objection. Key therefore could not know based upon legal research alone that she needed to file her request to

12

vacate the arbitration award within the 100-day period under section 1288.2.

That Key did not act more *carefully* in negotiating with Lender does not mean that her reliance on Lender's apparent intention to proceed with a hearing on the merits was *unreasonable*. As we noted in our prior opinion, whether or not Lender's conduct misled Key is irrelevant if the section 1288.2 deadline is jurisdictional. But the statute is not jurisdictional, and principles of equity therefore apply. The effect of Lender's apparent acquiescence to the filing and hearing schedule that the parties discussed is therefore significant. We decline to hold that a party acts unreasonably for purposes of equitable tolling if it does not sufficiently paper the file to preclude the possibility of a litigation "gotcha" by its opponent.

Thus, the doctrine of equitable tolling excused Key's failure to meet the 100-day deadline under section 1288.2. We therefore proceed to consider Lender's arguments challenging the merits of the trial court's ruling.

3. **The Trial Court Did Not Err in Accepting the Arbitrators' Findings that the Loan Was a Consumer Loan**

   A. ***The principle that a trial court should review de novo an arbitrator's findings that contravene public policy does not apply here***

A trial court's authority to disturb arbitration awards is limited. "[B]oth because it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, 'The merits of the controversy between the

13

parties are not subject to judicial review.' " *(Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*), quoting *O'Malley v. Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 111.) Section 1286.2 effectuates this policy by limiting the authority of trial courts to vacate arbitration awards to specific grounds. One of those grounds applies when arbitrators have "exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).)

But this general rule of judicial deference to an arbitrator's findings is not without exception. Where an arbitrator makes a finding that would violate a party's unwaivable statutory rights or that would contravene a public policy explicitly set forth by our Legislature, trial courts may not defer to the arbitrator's finding and must instead engage in de novo review of that finding; that is because the courts have an independent duty to enforce such rights and public policy, and may not abdicate that duty by deferring to an arbitrator's ruling that does not safeguard those rights and public policy. (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*); *Loving & Evans v. Blick* (1949) 33 Cal.2d 603, 609, 614 (*Loving*); *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 38 (*Ahdout*).) This exception is the reason why trial courts will engage in de novo review of an arbitrator's finding that a contract is valid or enforceable where a party challenging that finding argues it was made in contravention of a statutory right or explicit public policy; deferring to the arbitrator's finding that the contract is valid in this situation risks leaving that right or public policy unenforced. (*Ahdout*, at pp. 24, 38–39 [so concluding where arbitrator's finding that party had not acted as a contractor contravened public policy that

14

unlicensed contractors may not retain compensation for contracting work]; *Loving*, at pp. 608, 610, 615 [same, where failure to comply with state licensing requirements rendered entire transaction giving rise to arbitration and resulting award invalid]; *Lindenstadt*, *supra*, 55 Cal.App.4th at p. 892 [same, where arbitrator's finding that party acted lawfully as a finder, rather than unlawfully as an unlicensed real estate broker, determined whether agreement was valid].)

Lender seeks to invoke this exception here, urging that the trial court should have engaged in a de novo review of the arbitrators' findings that the Loan is a consumer loan.

This argument is not well taken.

Unlike in *Ahdout*, *Loving*, and *Lindenstadt*, Lender is not challenging an arbitrator's finding that a contract is lawful notwithstanding a statute or public policy that might render it unlawful. That is because the arbitrators in this case determined that there *was* an overriding public policy—namely, the CFL (Fin. Code, §§ 22750, subd. (b), 22309, 22306)—and went on to find that the Contract in this case contravened that public policy and was therefore invalid. Thus, there is no need for greater judicial scrutiny in order to safeguard a statutory right or express public policy. The de novo review standard simply does not apply in this context. (Accord, *Bacall v. Shumway* (2021) 61 Cal.App.5th 950, 959 [rejecting application of exception in similarly "opposite scenario" where party argued "award must be vacated because the arbitrator erroneously failed to enforce a legal contract"].)

The only reason that Lender received an award in its favor is because the arbitrators—notwithstanding their finding that the Contract was void—still awarded a remedy. But we need not

15

evaluate whether the remedy awarded in this case was appropriate—under any standard—because Lender does not dispute that, if the Loan was a consumer loan and the interest provisions in the Contract therefore violated the CFL, the remedy afforded by the arbitrators is invalid. Thus, there is no basis for applying de novo review.

Because the exception specifying de novo review is inapplicable, Lender is left claiming that the arbitrators' finding that the Loan is a "consumer loan" is an error of fact and law. As such errors are outside of the limited judicial review of arbitration awards (*Moncharsh, supra*, 3 Cal.4th at p. 11 ["an arbitrator's decision cannot be reviewed for errors of fact or law"]), Lender's claim necessarily fails.

## B. *Lender failed to preserve its argument that the trial court was required to conduct a de novo review*

An additional reason exists to reject Lender's argument that the trial court was required to conduct a de novo review of the legality of the Contract: Lender never *asked* the trial court to review the evidence supporting the arbitrators' findings. Indeed, Lender petitioned to confirm the award, and expressly argued that "[no] grounds exist to correct or vacate the award"—yet, such grounds would have to exist to trigger the exception for de novo review. Lender has therefore forfeited the argument that the trial court was required to do so. (See *Richey*, *supra*, 60 Cal.4th at p. 920, fn. 3 [plaintiff waived argument that arbitrator's findings were based upon an illegal contract provision when he failed to raise the argument in the trial court].)

Lender argues that it was not required to request a de novo review of the evidence in the trial court because it was *Key's*

responsibility to obtain "independent findings on every issue necessary to obtain vacatur." As discussed above, there was no apparent legal justification for the trial court to review the arbitrator's findings on the issue of whether the Loan was a consumer loan, much less a legal requirement that it do so. But even if independent findings were necessary here, Lender does not cite any authority showing that it was *Key's* obligation to ask for them. And, in any event, even if Key had such an obligation, Lender still was required to object to Key's proposal for a procedure that Lender now claims was improper.

" 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method.' " (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1, quoting 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 276, pp. 4264–4265.) In particular, objections to evidence are forfeited if not made. (Evid. Code, § 353, subd. (a).)

Key sought an order vacating the arbitrators' award on the ground that the remedy awarded to Lender violated public policy in light of the findings that the arbitrators had made regarding the Contract. Her request therefore invited the trial court to rely on the arbitrators' findings as the factual and legal support for vacating the arbitration award. (See *Loving*, *supra*, 33 Cal.2d at p. 621 (dis. opn. of Carter, J.) [whether or not contract was valid is mixed question of law and fact].) If Lender believed that the trial court could not properly rely on those findings, Lender was required at a minimum to object to the procedure that Key proposed.

17

Finding error in the trial court's reliance on the arbitrators' findings here in the absence of any contrary request or objection by any party would be particularly unfair to the trial court in light of the deference that the courts must give to arbitrators' findings. As discussed above, the courts' authority to revisit arbitration findings is very limited. And even when an exception exists permitting such review, a party must invoke it. The findings at issue here did not exceed the arbitrators' powers or the scope of the arbitration. Under these circumstances, there was no reason for the trial court to review the arbitrators' findings absent a request by a party, or even to consider whether it had the authority to do so. If Lender believed that the trial court was required to independently review the evidence and law that the Loan was a consumer loan in connection with Key's request to vacate the arbitrators' award, it should have asked the court to conduct such a review.

Lender also urges this court to apply an exception to the rule that appellants may not raise new issues on appeal because the question whether the trial court was required to conduct a de novo review of illegality was a "purely legal issue." That may be so, but the legal issue also bears on a factual one. Considering a purely legal issue for the first time on appeal may be permissible if it can fairly be done on the existing factual record and does not depend upon facts that were not presented in the trial court. (See *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167 [exception to waiver rule applies "where the theory presented for the first time on appeal involves only a legal question determinable from facts which not only are uncontroverted in the record, but which could not be altered by the presentation of additional evidence"].) And even when that is

18

the case, whether to make an exception to the general rule is "largely a question of the appellate court's discretion." (*Ibid.*)

Here, Lender does not seek to have this court decide an issue of law based on the existing factual record. Rather, its argument is that the factual record itself is lacking. It would be unfair to find reversible error in the trial court's failure to find particular facts when Lender never requested such findings.

## DISPOSITION

The trial court's order is affirmed. Key is entitled to her costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.


19