Filed 10/31/22 3200 Imperial Highway v. Setareh CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| 3200 IMPERIAL HIGHWAY CORP., | B312467 |
| Plaintiff and Appellant; | Los Angeles County Super. Ct. No. BC573118 |
| MEHRDAD SETAREH et al., | |
| Cross-defendants and Appellants, | |
| v. | |
| KAMRAN SETAREH, | |
| Defendant, Cross-complainant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge. Affirmed.

Southern California Attorneys and Mac E. Nehoray for Plaintiff, Cross-defendants and Appellants.

Sam Vahedi & Associates and Sam Vahedi for Defendant, Cross-complainant and Respondent.

———————

Mehrdad Setareh and 3200 Imperial Highway Corp. (IHC) (collectively, plaintiffs) appeal from a judgment confirming an arbitration award in favor of Mehrdad's brother Kamran Setareh.[1] In confirming the award, the trial court rejected IHC's response—asking the court to vacate the award—because it was filed more than 10 days after service of Kamran's petition to confirm, in contravention of Code of Civil Procedure section 1290.6.[2] The court found that, although IHC had presented evidence that could support the vacation of the arbitration award, it could not consider IHC's response because the 10-day deadline was jurisdictional. The court thus considered the petition unopposed, deemed its factual allegations admitted under section 1290, and confirmed the award.

We conclude section 1290.6 authorizes a court to consider—upon a showing of good cause—a responsive request to vacate an award filed more than 10 days after service of a petition to confirm, where, as here, the response is served and filed within 100 days of service of the award. Nevertheless, because plaintiffs failed to provide an adequate record demonstrating the trial court erred, we affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

Kamran and Mehrdad are brothers and shareholders in their family-owned corporation IHC, a real estate holding company for a commercial property that generates rental income. Mehrdad is the majority shareholder of IHC. IHC's underlying

---

[1]     We refer to the Setareh brothers by their first names to avoid confusion.

[2]     Statutory references are to the Code of Civil Procedure, unless otherwise indicated.

2

lawsuit against Kamran alleges he owes IHC for the attorney fees it incurred in defending a lawsuit a third brother brought against Kamran and IHC.[3] The operative second amended complaint alleges Kamran's fraudulent conduct caused the third brother to file his lawsuit. Kamran cross-complained against IHC and Mehrdad, alleging Mehrdad, who controlled IHC's finances, breached his fiduciary duty, and he and IHC owed Kamran shareholder distributions and other funds.

Eventually, the parties stipulated to submit the entire cause to arbitration. The stipulation—signed by the parties on June 12 and 13, 2019, and filed by the court on June 18, 2019— is titled, "Stipulation and Order for Binding Arbitration." It states the parties "stipulate to submit the instant matter to arbitration pursuant to section 3.817 et seq. of [the] California Rules of Court," and ask the court to stay the action pending the outcome of the arbitration. The parties agreed: to submit "all . . . claims and counter claims" to a panel of three named arbitrators, with a decision of the majority to determine the prevailing party; "a final written decision shall be rendered by the arbitrators within 30 days of the [a]rbitration hearing at which time the original award shall be filed with the Court"; to share the cost of the arbitration equally; and there would be no further discovery.

The arbitration was conducted over two hearings on August 20 and October 6, 2020. On November 3 and 4, 2020, two of the three arbitrators signed an arbitration award, as

_____

[3] In February 2015, Mehrdad filed, in his individual capacity, the original complaint against Kamran. The court subsequently ordered Mehrdad to amend the action to substitute IHC for Mehrdad as the plaintiff.

"concurring court-appointed arbitrators," in favor of Kamran on both the complaint and cross-complaint. They awarded Kamran a total of $238,536.33, plus attorney fees and costs incurred in connection with the lawsuit, including the arbitration.

Kamran's counsel sent a proposed arbitration award to the two arbitrators who ultimately signed the award. According to plaintiffs' counsel, neither the proposed award nor executed final award was sent to the third arbitrator, and the arbitrators never sent the final executed award to plaintiffs' counsel. Rather, on November 4, 2020, Kamran's counsel served plaintiffs' counsel with a notice of entry of arbitration award.

On November 16, 2020, Kamran filed a petition to confirm the arbitration award on the judicial council form approved for arbitrations "conducted pursuant to an agreement" subject to section 1285 et seq. The petition attached a copy of the stipulation and the signed "final binding arbitration award." On November 18, 2020, IHC filed a judicial council form request for trial de novo after judicial arbitration under section 1141.20 and rule 3.826 of the California Rules of Court.[4] The same day, Kamran filed objections to the request contending a trial de novo was unavailable as the parties had not participated in a nonbinding, judicial arbitration but a contractual, binding arbitration. Kamran also filed a notice of hearing on the petition for January 8, 2021.

---

[4] Rule references are to the California Rules of Court. Rule 3.826 permits a party to request a trial within 60 days after a judicial arbitration award has been filed with the court. (Rule 3.826(a).) If the request is timely, the "case must be tried as though no arbitration proceedings had occurred." (Rule 3.826(c).)

4

On December 24, 2020, nine court days before the noticed hearing date, IHC filed an "opposition" to Kamran's petition to confirm the arbitration award. IHC argued the court must set aside the arbitration award and set the matter for a jury trial because the parties stipulated to nonbinding arbitration, and IHC had filed a timely request for trial de novo. Plaintiffs' counsel declared the parties agreed in March 2019 to submit the matter to binding arbitration, but they never executed the stipulation he prepared. In June 2019, the parties agreed to have the matter "proceed as [j]udicial [a]rbitration." Plaintiffs' counsel said he revised the original stipulation but "[u]nfortunately" failed to delete the word " '[b]inding' " from the caption. The body of the stipulation does not call the arbitration "binding." Plaintiffs' counsel noted the stipulation states the arbitration "was to be conducted under . . . [r]ules . . . 3.817 et seq.[,] which is for [j]udicial [a]rbitration and NOT [b]inding [a]rbitration."

IHC alternatively argued that, even if the award were binding, the court must vacate it based on any one of the following grounds set forth in section 1286.2: the award was "procured by corruption, fraud or other undue means"; there was "corruption in any of the arbitrators"; IHC's rights "were substantially prejudiced by misconduct of a neutral arbitrator"; and the "arbitrators exceeded their powers." (§ 1286.2, subd. (a)(1)–(4) ["court shall vacate the award" if it determines any of the enumerated grounds occurred].) IHC presented evidence supporting its request to vacate through its counsel's declaration and various e-mail communications among the arbitrators, counsel, and parties.

Among other things, plaintiffs' counsel declared he discovered, after the arbitration's conclusion, two of the three

5

arbitrators could not read or write in English; the three arbitrators never met to deliberate and discuss the matter, and the third arbitrator did not know the award had been signed; the lead arbitrator was "working together"—and had ex parte communications—with Kamran; the lead arbitrator allowed undesignated expert witnesses to testify on behalf of Kamran and refused to take plaintiffs' documentary evidence with him at the end of the hearing; and the arbitrators signed an award unilaterally prepared by Kamran's counsel that awarded items not presented during the arbitration.

Kamran's reply objected to IHC's opposition as untimely under section 1290.6, which required IHC's response to "be served and filed within 10 days after service of the petition." Kamran argued the trial court thus had no authority to consider the opposition under *Rivera v. Shivers* (2020) 54 Cal.App.5th 82, 94 (*Rivera*), must consider the petition's allegations admitted as true under section 1290, and should confirm the award. Other than to object to plaintiffs' counsel's declaration and deny IHC's accusation that the award was a product of fraud, corruption, or other impropriety, Kamran did not address the substance of IHC's request to vacate. He contended IHC had forfeited its right to challenge the petition.

Kamran briefly addressed the parties' stipulation, however. He declared the brothers agreed to submit the matter to binding arbitration to avoid a lengthy trial. He was self-represented when he signed the stipulation plaintiffs' counsel prepared— his current counsel began to represent him around June 2020. Kamran's counsel attached two emails to his declaration showing plaintiffs' counsel, on August 10, 2020, and his law partner, on August 13, 2020, described the arbitration as "binding."

The trial court ultimately convened the hearing on Kamran's petition to confirm on January 29, 2021. No reporter was present, but the court's minute order includes its ruling. The court concluded the parties' arbitration "was a binding arbitration." The court recognized the stipulation was ambiguous as it included "[b]inding [a]rbitration" in its title but provided the parties " 'stipulate to submit the instant matter to arbitration' " under rule 3.817 et seq., which "set forth the rules regarding nonbinding judicial arbitration, not binding contractual arbitration." The court noted, under Civil Code section 1654, any uncertainty in the stipulation must be construed against IHC, whose attorney drafted the stipulation. The court also found the extrinsic evidence—the two emails Kamran included with his reply—"shows that the parties intended the stipulation to be for binding arbitration."

Addressing the merits, the court noted IHC had filed its opposition to the petition within nine court days before the scheduled hearing date as required for a typical motion under section 1005, subdivision (b). The court found, relying on *Rivera*, it had no authority to consider IHC's response because it was not filed and served within 10 days of the petition as required by section 1290.6 and thus "was not duly served and filed" under section 1286.4, subdivision (a). The court stated,

> "Due to what was apparently plaintiff's or its legal representative's mistake, inadvertence, or neglect in failing to timely respond to the petition within 10 days per CCP § 1290.6 but did respond within nine court days of the hearing per CCP § 1005(b), this Court cannot entertain the substantial evidence that the

7

award should be vacated under CCP § 1286.2(1)–(4) because it was procured by corruption, fraud, or other undue means, that there was corruption in the arbitrators, that plaintiff's rights were substantially prejudiced by misconduct of a neutral arbitrator, and that the arbitrators exceeded their powers."

The court then granted the petition to confirm the arbitration award. On February 5, 2021, the trial court signed and entered a "final judgment and order confirming binding arbitration award."

On February 16, 2021, IHC and Mehrdad filed a motion asking the court to reconsider its January 29, 2021 ruling under section 1008, based on new evidence showing the parties agreed to nonbinding arbitration. The motion also asked the court to set aside the judgment under section 473, subdivision (b) (§ 473(b)), and consider IHC's opposition to the petition, because plaintiffs' counsel filed the opposition late due to his mistake, inadvertence, surprise, or neglect, and section 1290.6 authorizes the court to extend the 10-day deadline for good cause.

Kamran opposed the motion. He contended the new evidence plaintiffs submitted was fraudulent and, in any event, did not meet the "new fact" requirement of section 1008. Kamran also argued the court lacked jurisdiction to grant IHC relief under section 473(b) because IHC's response was filed outside the 10-day jurisdictional deadline. Plaintiffs' reply included additional evidence to show the parties intended the arbitration to be nonbinding. Kamran in turn responded with further evidence to show they agreed to binding arbitration. Needless

8

to say, each side accused the other of lying and fabricating evidence.

The court convened a hearing on plaintiffs' motion on March 30, 2021. Although a reporter was present, the appellate record does not include a reporter's transcript of the proceeding. The court denied plaintiffs' motion in its entirety. The court found it had no jurisdiction to reconsider its ruling under section 1008 because it already had entered judgment. The court also found plaintiffs could not use section 473(b) to excuse the untimeliness of a response to a petition to confirm because the deadline was jurisdictional.

On April 5, 2021, IHC and Mehrdad filed a notice of appeal. The notice states the appeal is "[f]rom an [o]rder [d]enying vacation of Arbitrator's Award under Code of Civil Procedure sec. 1294 (b), (d) and (e)"[5] and provides an entry date of February 5, 2021.

## DISCUSSION

### 1. *Scope of appeal*

We first address Kamran's contention that, because plaintiffs' notice of appeal does not include the court's postjudgment March 30, 2021 order denying IHC's motion for relief under section 473(b), the scope of our review is limited to the February 5, 2021 judgment confirming the arbitration award. We agree.

Although the notice of appeal states the appeal is from an *order* denying vacation of the arbitration award, we liberally

---

[5]     Section 1294, subdivisions (b), (d), and (e) permit a party to appeal from, respectively, an order dismissing a petition to confirm, correct, or vacate an arbitration award; a judgment; and a "special order after final judgment."

9

construe the notice as appealing from the *final judgment* and order confirming the award, entered on February 5, 2021—the date identified on the notice of appeal. (Rule 8.100(a)(2) [notice of appeal must be liberally construed].)[6] Our review of the final judgment encompasses the court's rejection of IHC's response to the petition to confirm, however. (§ 1294.2 ["court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially affects the rights of a party"].)

In their opening brief, plaintiffs not only contend the court erred in rejecting IHC's response and confirming the arbitration award, but also that it erred in not considering their motion for relief under section 473(b). Indeed, in their reply brief, plaintiffs argue, "This Court is tasked with deciding whether or not the trial court erred in not even considering [IHC's] argument and evidence presented to the Court via its [section] 473(b) motion as to whether or not the arbitration was binding." Plaintiffs do not address the omission of the order denying their section 473(b) motion from their notice of appeal.

The notice of appeal refers to section 1294, subdivision (e), which permits an appeal from a "special order after final judgment." An order denying a motion to set aside a final judgment under section 473(b) is "a special order after judgment on a statutory motion to set aside the judgment, and as such is

---

[6] As IHC did not file a separate petition to vacate the arbitration award, the court's rejection of IHC's response on January 29, 2021 when it granted the petition to confirm was not an order dismissing a petition to vacate an award and thus was not separately appealable under section 1294, subdivision (b).

10

appealable." (*Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1137 [motion to set aside default judgment].) Nevertheless, the notice of appeal neither mentions the order denying IHC's section 473(b) motion, nor includes the date of that order— March 30, 2021.

" ' "[W]here several judgments and/or orders occurring close in time are separately appealable . . . each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal." ' [Citations.]" (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239.) "The policy of liberally construing a notice of appeal in favor of its sufficiency [citation] does not apply if the notice is so specific it cannot be read as reaching a judgment or order not mentioned at all." (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173; see also § 1294.2 [appellate court is not authorized "to review any decision or order from which an appeal might have been taken"].)

As the order denying the motion to set aside the judgment under section 473(b) was separately appealable, and plaintiffs "totally omit[ted] any reference" to it in their notice of appeal, we lack jurisdiction to consider their challenge to that order. (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46–47 [no jurisdiction to review appealable order granting costs and attorney fees when notice of appeal mentioned underlying judgment only]; *Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1172 [" ' "a notice of appeal will not be considered adequate if it completely omits any reference to the judgment [or order] being appealed" ' "].)

Accordingly, we consider only whether the trial court erred in granting the petition to confirm the arbitration award.

11

## 2.     *Binding vs. nonbinding arbitration*

"Contractual arbitration is regulated by section 1280 et seq. and 'generally results in a binding and final decision.'  [Citation.] Except as provided by sections 1286.2 and 1286.6, the awards resulting from such arbitrations are not subject to judicial review."  (*Rivera, supra,* 54 Cal.App.5th at p. 89.)  In contrast, judicial arbitration, governed by section 1141.10 et seq., " 'generally does not result in a binding or final decision . . . but instead allows a trial de novo at the election of any party by timely request therefor[.]' "[7] (*Rivera,* at p. 90.)  Parties to a litigation may voluntarily submit to either contractual, binding arbitration or judicial, nonbinding arbitration.  (*Ibid*.)

Here, within two days of each other, Kamran filed a timely petition to confirm a "contractual arbitration award" under section 1288, and IHC filed a timely "request for trial de novo after judicial arbitration," under section 1141.20 and rule 3.826. The two forms of arbitration, however, are "mutually exclusive and independent of each other."  (§ 1141.30.)  Accordingly, before the trial court could consider Kamran's petition, it had to determine whether the parties stipulated to binding, contractual arbitration or nonbinding, judicial arbitration.

The parties stipulated to submit their dispute to arbitration more than four years after Mehrdad filed the initial complaint. The June 18, 2019 stipulation was the only written agreement then available to the court that reflected the parties' agreement

---

[7]     Judicial arbitration is a statutory, mandatory arbitration program authorizing courts to order certain types of cases to nonbinding arbitration.  (§ 1141.11.)  Parties may stipulate to judicial arbitration, however.  (§ 1141.12; rule 3.811(a)(4).)

to arbitrate their dispute.[8]  We apply general contract law principles to construe the parties' stipulation to arbitrate. (*Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341 (*Sy First*) [stipulation is an agreement subject to ordinary rules of contract interpretation]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 [" '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate' "].)  The "court's paramount consideration in construing [a] stipulation is the parties' objective intent when they entered into it." (*Sy First*, at p. 1341; Civ. Code, § 1636.) If possible, we infer the parties' intent solely from the language of the agreement.  (Civ. Code, §§ 1638, 1639.)  We consider the contract as a whole, "giv[ing] effect to every part, if reasonably practicable, each clause helping to interpret the other." (*Id*., § 1641.)

When the parties dispute the meaning of contractual language, we determine "whether the language is 'reasonably susceptible' to the interpretations urged by the parties." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 798.)  If the language of a contract is ambiguous, i.e., susceptible to more than

---

[8]  Both sides filed the June 2019 stipulation as evidence in support of their respective positions in connection with Kamran's petition.  Plaintiffs then filed an "arbitration agreement" for judicial arbitration, as well as other extrinsic evidence, in support of their motion for reconsideration/relief under section 473(b), and Kamran filed a "binding arbitration agreement," and other extrinsic evidence, in opposition to the motion.  As the order denying that motion is not properly before us, we do not consider any evidence submitted in support of, or in opposition to, it.

13

one reasonable interpretation, the court may consider extrinsic evidence to determine the parties' intent. (*Ibid.*; *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126.)

"Interpretation of a contract is solely a question of law unless the interpretation turns upon the credibility of extrinsic evidence. [Citations.] Even where extrinsic evidence is admitted to interpret a contract, unless it is conflicting and requires a determination of credibility, the reviewing court is not bound by the trial court's interpretation." (*Badie v. Bank of America, supra*, 67 Cal.App.4th at p. 799.) Where the parties present conflicting extrinsic evidence, however, the substantial evidence rule applies. (*Burch v. Premier Homes, LLC* (2011) 199 Cal.App.4th 730, 742.) In that case, "[a]s long as the trial court's order was supported by substantial evidence in the record, any evidentiary conflict must be resolved in favor of the prevailing party . . . and any reasonable interpretation of the writing by the trial court will be upheld." (*Ibid.*)

We agree with the trial court that the plain language of the stipulation is ambiguous: The stipulation is entitled, "Stipulation and Order for Binding Arbitration," but it states the parties "stipulate to submit the instant matter to arbitration pursuant to section 3.817 et seq. of [the] California Rules of Court." Rules 3.810 through 3.830 are the court rules governing the practice and procedure of judicial arbitrations. As plaintiffs note, the body of the stipulation does not qualify "arbitration" with the word "binding." At the same time, nowhere does the stipulation describe the agreed-to arbitration as "judicial" or "nonbinding." Nor does the stipulation refer to the statutory provisions governing nonbinding or binding arbitration.

And, despite referring to rule 3.817 et seq., the terms of the stipulation include indicia of both binding and nonbinding arbitration.  For example, the parties agreed there would be no further discovery "in this matter," despite the right to conduct discovery in judicial arbitrations under rule 3.822. (Rule 3.822(a) & (b) [parties to judicial arbitration have right to take depositions and to obtain discovery, but discovery must be completed 15 days before arbitration hearing]; see also *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 344 [contractual arbitration "does not permit full and unconditional discovery . . . whereas judicial arbitration does"].)  On the other hand, the stipulation provides for the arbitrators to render "a final written decision" within 30 days of the arbitration hearing "at which time the original award shall be filed with the Court." In a contractual arbitration, the prevailing party has four years to convert the award into an enforceable judgment through a petition to confirm.  (§§ 1287.4, 1288.)  Yet, the stipulation does not follow rule 3.825, which requires *the arbitrator* to file the award with the clerk *within 10 days* after the conclusion of the arbitration hearing.  (Rule 3.825(b)(1).)[9]  And, significantly, the stipulation does not refer to the parties' ability to request a trial de novo after the arbitrators' final award is filed with the court, as set forth in rule 3.826 and section 1141.20.

---

[9]    It is unclear whether the arbitrators or parties were expected to file the award with the court.  In any event, the arbitrators didn't file it.  It seems the award was not filed with the court until Kamran—the prevailing party—filed a notice of entry of final binding arbitration award, followed by his petition to confirm that attached the award.

15

As the stipulation is ambiguous, the trial court could consider evidence of the parties' conduct "after the execution of the contract, and before any controversy arose," to ascertain whether they intended the arbitration to be binding or not. (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1447–1449 [interpreting ambiguous interest rate provision in a loan agreement]; *Sy First, supra*, 70 Cal.App.4th at p. 1342 ["One important factor indicating the proceeding involved binding arbitration is the parties' conduct after entering into the stipulation."].)  Here, the court considered two emails dated August 10 and 13, 2020—sent shortly before the arbitration hearings commenced and well before the parties' dispute over the nature of the arbitration.  Nothing in the record suggests plaintiffs objected to their authenticity.

The August 10 email is from plaintiffs' counsel—who drafted the stipulation—to Kamran's newly retained counsel and the two arbitrators who ultimately signed the award. Plaintiffs' counsel tells Kamran's counsel, "As you are new, I will explain the court order that was issued regarding the Arbitration.  At the time the matter was ordered into binding arbitration, the Judge ordered no new discovery!!!"  Three days later, in a response to Kamran's counsel—copied to the same two arbitrators and plaintiffs' counsel—the law partner of plaintiffs' counsel stated, "[I]t should be mentioned that the code section cited by [Kamran's counsel] does not apply to this Arbitration which is a stipulated binding arbitration."[10]  As the trial court found, these emails demonstrate plaintiffs intended the arbitration to be binding.

---

[10]    The email does not mention what code section Kamran's counsel cited.

16

Based on plaintiffs' own counsel's pre-dispute characterization of the stipulated arbitration as "binding," the stipulation's reference to "binding arbitration" in its title, the lack of any mention of "nonbinding" or "judicial" arbitration or the right to request a trial de novo in its text, and the other terms in the stipulation we discussed, we conclude it is more reasonable to interpret the stipulation as requiring binding arbitration. (See *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393 ["party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms may reveal what the parties understood and intended those terms to mean"]; *Sterling v. Taylor* (2007) 40 Cal.4th 757, 772–773 ["[i]t is a 'cardinal rule of construction that when a contract is ambiguous or uncertain the practical construction placed upon it by the parties before any controversy arises as to its meaning affords one of the most reliable means of determining the intent of the parties' "].)

Considering the foregoing, and reading the stipulation as a whole, we can infer the reference to rule 3.817 et seq. expressed the parties' general intent to conduct the arbitration itself in the manner set forth in those rules,[11] without intending the arbitration award to be nonbinding. (See *Rivera, supra*, 54 Cal.App.5th at p. 91 ["[L]itigants are always free to voluntarily submit their dispute to arbitration on their own terms."].) For example, rule 3.817 dictates when and how to set the date and provide notice of the arbitration; rule 3.820 prohibits ex parte communications with the arbitrators; and rule 3.823 sets forth evidentiary rules.

---

[11] As we discussed, however, the stipulation's terms do not follow some of those rules.

The only extrinsic evidence IHC submitted in its response concerning the parties' intent was its counsel's declaration attesting the parties originally agreed to binding arbitration but, on June 12, 2019, "agreed to have this matter proceed as Judicial Arbitration under the California Rules of Court §3.817 et seq." Counsel averred he "[u]nfortunately" failed to delete the word " '[b]inding' " from the stipulation's title when he revised it but removed "all other references" to the arbitration being " '[b]inding' " from the body of the stipulation.

The court considered Kamran's petition unopposed because IHC's opposition was untimely under section 1290.6. As we noted, the hearing was not reported. We thus do not know whether the court entertained counsel's declaration or argument about the parties' intent at the hearing. Nevertheless, we can infer the court credited counsel's and his partner's *pre-dispute* email communications describing the arbitration as "binding" over counsel's *post-dispute* declaration stating the parties intended the arbitration to be nonbinding.[12] (See *Hearn v.*

_____

[12] The court also construed the stipulation against IHC under Civil Code section 1654 because plaintiffs' counsel drafted it and thus caused the uncertainty concerning the nature of the arbitration. As Kamran notes, application of this doctrine was unnecessary because the extrinsic evidence sufficiently demonstrated the parties intended the arbitration to be binding, as the trial court and we have concluded. (See, e.g., *Rainier Credit Co. v. Western Alliance Corp.* (1985) 171 Cal.App.3d 255, 264 ["Only in those instances where the extrinsic evidence is either lacking or is insufficient to resolve what the parties intended the terms of the contract to mean will the rule that ambiguities are resolved against the drafter of the contract be applied."].)

18

*Howard* (2009) 177 Cal.App.4th 1193, 1200–1201 [in absence of reporter's transcript appellate court presumes "that what occurred at that hearing supports the judgment"]; *Burch, supra,* 199 Cal.App.4th at p. 742 [evidentiary conflicts are resolved in favor of the prevailing party]; *id.* at p. 744 [" 'appellate court must defer to a trial court's assessment of the extrinsic evidence, as it defers to other factual determinations' "].) We similarly infer the court credited Kamran's declaration over plaintiffs' counsel's declaration. In any event, the trial court's order finding the parties' arbitration was binding is supported by both substantial evidence and our independent interpretation of the stipulation.

**3.** ***Section 1290.6***

Having concluded the arbitration was binding, we consider whether the trial court erred when it confirmed the arbitration award under section 1286 after it found it had no authority to consider IHC's late-filed request to vacate the award.[13] We review a trial court's findings of fact in deciding whether to confirm or vacate an arbitration award for substantial evidence, "but if 'the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo.' " (*Rivera, supra,* 54 Cal.App.5th at p. 89.) Here, the trial court's rejection of IHC's response raises issues of statutory construction, which we also review de novo. (*Santa Monica College Faculty Assn. v. Santa Monica Community College Dist.* (2015) 243 Cal.App.4th 538, 547, 551 (*Santa Monica College*) [trial court's interpretation

---

[13] Under section 1286, if a petition or response is "duly served and filed," the court must confirm the award as made, confirm it as corrected, vacate the award, or dismiss the proceeding.

19

of statutes and their application to undisputed facts are questions of law reviewed de novo].)

We begin our analysis with the language of the statutes and give the words their " 'usual and ordinary meaning.' " (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.) If the language is unambiguous, "we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.) We construe the words of a statute in context and, to the extent possible, harmonize provisions relating to the same subject matter. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

A party to an arbitration may petition the court to confirm an arbitration award anytime within four years after service of the award. (§ 1288.) A party who wants to vacate (or correct) an arbitration award may either file and serve a petition with the court or include a request to vacate the award in a response to a petition to confirm. (§§ 1285, 1285.2.) The party must file and serve the request to vacate (or correct) an arbitration award —whether by petition or in a response—within 100 days of service of the award. (§§ 1288, 1288.2.)

A court has no authority to vacate an arbitration award unless a petition or response asking the court to vacate the award "has been duly served and filed." (§1286.4, subd. (a).) The 100-day filing and service deadline under sections 1288 (petition to vacate) and 1288.2 (response containing a request to vacate) is jurisdictional: a party's failure to comply with the deadline deprives the court of the power to vacate the award. (*Law Finance Group, LLC v. Key* (2021) 67 Cal.App.5th 307, 313,

318–319 (*Law Finance Group*), review granted Nov. 10, 2021, S270798;[14] *Santa Monica College, supra,* 243 Cal.App.4th at pp. 544–546 [trial court "lacked jurisdiction to entertain" party's challenge to arbitration award where it served its petition to vacate 108 days after the award was served]; see also *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1203 [the 100-day deadline "operates in the same manner as the deadline for filing an appeal, and the court loses jurisdiction to vacate the award if the petition is not timely served and filed"]; *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 384–385, citing *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 745 [court must treat arbitration award as final if losing party fails to file and serve a petition to vacate or a response to a petition to confirm the award within the 100-day deadline].)

Under section 1290.6, a party who seeks to vacate an award through a response to a petition to confirm, also must serve and file the response within 10 days of service of the petition.[15]  In

---

[14]     Our Supreme Court granted review of the *Law Finance Group* decision to consider whether equitable tolling applies to the 100-day deadline in section 1288.2.  We consider *Law Finance Group* persuasive and cite it for its persuasive value. (Rule 8.1115(e)(1).)

[15]     Section 1290.6 generally governs the timing for service and filing of responses to petitions filed under title 9 of the Code of Civil Procedure, which governs arbitrations.  (See §§ 1290, 1290.6 [under chapter entitled "General Provisions Relating to Judicial Proceedings," and article entitled "Petitions and Responses"].)  It thus applies to responses to petitions to compel arbitration, to confirm an arbitration award, and to vacate or correct an arbitration award.

21

contrast to section 1288.2, however, section 1290.6 expressly provides that its 10-day deadline for serving and filing a response "may be extended by an agreement in writing between the parties to the court proceeding or, for good cause, by order of the court."[16]  Plaintiffs contend the 10-day deadline under section 1290.6 is not jurisdictional because, unlike the 100-day deadline under section 1288.2, the parties and the court have discretion to extend it.  They thus argue the court had authority to consider IHC's response because good cause existed to extend the 10-day deadline and Kamran would not have been prejudiced.

Our colleagues in Division Two considered the interplay between the 100-day deadline under section 1288.2 and the 10-day deadline under section 1290.6 in *Law Finance Group*. There, the defendant filed a petition to vacate an arbitration award and also asked the court to vacate the award in its response to the plaintiff's petition to confirm—both were filed more than 100 days from the service of the award.  (*Law Finance Group, supra*, 67 Cal.App.5th at pp. 313, 315–316.)  The trial court rejected the defendant's petition to vacate as untimely under section 1288 but ruled the response was timely under section 1290.6.[17]  (*Law Finance Group*, at p. 316.)  After finding

[16]    As the parties here did not agree to extend the filing deadline, we discuss only the court's authority to extend the deadline for good cause.

[17]    The defendant's response complied with section 1290.6 because the parties had stipulated that the 10-day deadline would not apply, and they would agree to a briefing schedule after setting the hearing.  (*Law Finance Group, supra*, 67 Cal.App.5th at p. 315.)  At the hearing, the court found that, if it were necessary " 'to extend the time to the actual filing date

the arbitrators exceeded their powers, the trial court vacated the arbitration award. (*Id*. at pp. 312–313.) Division Two reversed and remanded for the trial court to enter an order confirming the award. (*Id*. at p. 325.)

Applying general principles of statutory construction, the court synthesized sections 1288.2 and 1290.6 to provide, "[W]hen a petition to confirm an arbitration award is filed, a response requesting that the award be vacated must be filed within 10 days of the petition (*plus any extensions*), and in any event no later than 100 days after service of the award. A response that fails to comply with either deadline is untimely." (*Law Finance Group, supra*, 67 Cal.App.5th at p. 319, italics added.)

In analyzing the two statutes—which were enacted at the same time—the court presumed the Legislature intentionally omitted from section 1288.2 the extension provision that it included in section 1290.6. (*Law Finance Group, supra*, 67 Cal.App.5th at p. 320, citing *Walt Disney Parks & Resorts U.S., Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 879 ["where a phrase is included in one provision of a statutory scheme but omitted from another provision, 'we presume that the Legislature did not intend the language included in the first to be read into the second' "]; *Hennigan v. United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 8 [" 'The fact that a provision of a statute on a given subject is omitted from other statutes relating to a similar subject is indicative of a different legislative intent for each of the statutes[.]' "].) Nor did the statutory scheme suggest the

---

[to hear the request to vacate], the court finds good cause to grant such an extension.' " (*Id*. at p. 316.)

23

Legislature "intended the procedural rule in section 1290.6 governing all responses to take precedence over the firm time limitation in section 1288.2 applicable to requests to vacate." (*Law Finance Group*, at p. 319.)

Here, however, IHC undisputedly complied with the 100-day jurisdictional deadline mandated by section 1288.2 but filed its response 40 days from service of the petition. As our colleagues recognized, the filing deadline under section 1290.6 includes *any extensions*. Applying the logic in *Law Finance Group*, we also can presume the Legislature intentionally gave trial courts the discretion to extend the 10-day filing deadline imposed by section 1290.6. It follows, then, that a trial court may, for good cause, allow a party to serve and file a response to a petition to confirm more than 10 days from service of the petition, as long as that date falls within the 100-day deadline under section 1288.2.

Here, the trial court—relying on *Rivera*, as Kamran did and does on appeal—found it had "no authority to hear" IHC's request to vacate because IHC did not file and serve its response within 10 days of Kamran's petition. The plaintiff in *Rivera*, like IHC, filed a response to a petition to confirm "within the 100-day period under section 1288.2, but beyond the 10-day period under section 1290.6." (*Rivera, supra*, 54 Cal.App.5th at p. 93.) As a result, the Court of Appeal concluded the response "was not 'duly served and filed,' and thus the trial court had no authority to hear it." (*Id.* at p. 94.) Nevertheless, the court considered the substance of plaintiff's request to vacate and concluded that it had no merit. (*Ibid.*)

The court in *Rivera*, however, did not mention, much less discuss, the trial court's authority under section 1290.6 to extend

24

the 10-day deadline for good cause. The plaintiff does not appear to have raised that issue. We thus do not read *Rivera* to hold a trial court never has authority to consider a responsive request to vacate filed late under section 1290.6, but on time under section 1288.2. Moreover, the trial court there had denied the petition to confirm after treating the parties' stipulation as one for *nonbinding* arbitration. (*Rivera, supra*, 54 Cal.App.5th at pp. 87–91.) The reviewing court concluded the arbitration was binding, however. (*Id.* at p. 91.)

And, contrary to Kamran's assertion on appeal, the court in *Santa Monica College* did not hold the trial court there lacked jurisdiction to vacate an arbitration award *because* the defendant filed responses to the plaintiff's petitions to confirm more than 10 days from their service. In *Santa Monica College*, the appellate court reversed the trial court's order granting the defendant's *petition* to vacate three arbitration awards. (*Santa Monica College, supra*, 243 Cal.App.4th at pp. 543, 555.) It held the trial court had no jurisdiction to "entertain" the defendant's challenge to one of the three awards—because the defendant had served its petition more than 100 days after the service of that award—and concluded the court erred in vacating the other two awards on the merits. (*Id.* at pp. 544–555.)

The defendant there also had filed late responses to the plaintiff's petitions to confirm the awards, which the plaintiff had filed *after* the defendant's petition. (*Santa Monica College, supra*, 243 Cal.App.4th at pp. 543, 545.)[18] Thus, even if the defendant in

---

[18] The procedural history was slightly more complicated. The parties initially filed their petitions as limited jurisdiction matters. The limited jurisdiction court confirmed the awards, but the appellate division vacated them because they should

25

*Santa Monica College* had filed its responses within the 10-day deadline, they would have been untimely under section 1288.2. In other words, both the defendant's petition *and* responses blew the 100-day jurisdictional deadline as to that one award. The trial court's authority to consider the late-filed responses under section 1290.6 simply was not at issue, and the appellate court did not discuss it.

As plaintiffs note, appellate courts have confirmed a trial court's authority to consider a late-filed response to a petition to compel arbitration under its authority to extend the 10-day deadline under section 1290.6. For example, in *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 846–847, the defendant argued on appeal that the allegations in its petition to compel arbitration must be deemed true under section 1290 because the plaintiff served and filed its response more than 10 days from service of the petition. The court disagreed, noting, "Courts have long acknowledged that the trial court may consider untimely filed and served response papers, when no prejudice to the petitioner is shown, without an order extending the 10-day time period of section 1290.6." (*Ruiz*, at p. 847.) The trial court had considered the plaintiff's late-filed opposition and then denied the motion to compel after plaintiff's counsel "offered good cause" at the hearing—counsel had treated the petition as a motion and thus filed and served the response within the time

---

not have been adjudicated there. The defendant then moved to reclassify its petition as an unlimited jurisdiction matter, and the plaintiff filed a second petition to which the defendant filed a demurrer and a response. (*Santa Monica College, supra*, 243 Cal.App.4th at p. 543.)

26

required to oppose a motion under section 1005, subdivision (b). (*Ruiz*, at pp. 847–848.)

Kamran argues this rationale does not apply to a response to a petition to confirm an arbitration award. As Kamran notes, a party to a lawsuit may proceed to compel arbitration either by filing a petition or a motion. (See *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 612–613 (*Correia*), relied on by Kamran [noting "it is not clear that the arbitration petition statute—rather than the general motions statute—governs the timing requirements" of a petition to compel arbitration and opposition to it]; *Mercury Ins. Group v. Superior Court, supra,* 19 Cal.4th at p. 349 [noting that where an action is already pending, "one may proceed by motion as well as petition" to compel arbitration].)

In *Correia*, the plaintiffs also filed their response to a petition to compel arbitration within the deadline to file an opposition to a motion under section 1005, subdivision (b)— nine court days before the hearing—rather than within 10 days from service of the petition. (*Correia, supra,* 32 Cal.App.5th at pp. 612–613.) The Court of Appeal rejected the defendant's contention that the trial court had no jurisdiction to consider the untimely response. Although the court concluded it was unclear whether section 1005 or section 1290.6 governed the time for plaintiffs to file their opposition, it noted section 1290.6 "specifically allows a court to extend the time for filing an opposition for good cause, and reviewing courts have long held trial courts are authorized to consider late-filed opposition papers for good cause if there is no undue prejudice to the moving party." (*Correia*, at p. 613.) The court added, "an untimely opposition to a petition or motion to compel arbitration should be viewed under

27

'the strong policy of the law favoring disposition of cases on the merits.' " (*Ibid.*)

Although this last point does not apply in the context of whether a court should enforce or vacate an arbitration award—as the arbitration already would have occurred—the first point does. Given the plain language of section 1290.6, we do not see why the statute does not similarly permit a trial court to consider a late-filed response to a petition to confirm an arbitration award if the response was served and filed within 100 days from the service of the award. In effect, the court would be ordering the 10-day deadline extended to the actual date the late response was filed.

Kamran seems to argue the trial court here lacked jurisdiction to hear IHC's request to vacate because IHC did not obtain a signed court order granting it an extension under section 1290.6 *before* it filed its response late. We do not agree. Nothing in the statute's express language prevents the court from retroactively ordering the 10-day deadline extended before it decides a petition to confirm.[19] If the Legislature did not intend to grant the court that discretion, it could have excluded responses to petitions to confirm awards from section 1290.6 altogether or added language mandating any court order extending the 10-day deadline be entered *before* the deadline's expiration. As it did not, we read section 1290.6—together with section 1288.2—as authorizing a trial court to consider, upon a showing of good cause, a late-filed response to a petition

---

[19] By using the word "retroactively," we do not suggest a trial court has authority to order the filing date for a late response extended *after* already having ruled on a petition.

to confirm, if the response was served and filed within the 100-day deadline under section 1288.2.

We do not intend to suggest the service and filing deadline for a response to a petition to confirm is not jurisdictional, however. We simply clarify the extent of the trial court's authority under section 1290.6 to extend the 10-day deadline, and the Legislature's intent to include any extensions by the court within that deadline. Consistent with the authorities we have discussed, therefore, a response served and filed within the 10-day deadline under section 1290.6 *plus any extensions*— whether granted prospectively or retroactively—and within the 100-day deadline under section 1288.2, is "duly served and filed," meaning the court has jurisdiction to hear it. (§ 1286.4, subd. (a) [a court "may not vacate an award unless . . . [a] petition or response requesting that the award be vacated has been duly served and filed"].)

Of course, if the responding party never made a proffer of good cause to the trial court under section 1290.6, or the trial court rejected the party's claim that good cause existed to extend the time to respond, then the response would not have been "duly served and filed." In that case, we agree the trial court would have no jurisdiction to consider the response's request to vacate, and the petition's allegations would be deemed admitted under section 1290. (§ 1290 ["allegations of a petition are deemed to be admitted by a respondent . . . unless a response is duly served and filed"].)

Here, IHC filed its opposition to Kamran's petition to confirm the arbitration award on December 24, 2020—well within the 100-day deadline under section 1288.2, but 30 days too late under section 1290.6. Upon IHC's showing of good cause,

29

therefore, the trial court had discretion to deem the filing date extended to December 24, 2020, and consider the merits of the response. The trial court stated it had no authority to consider IHC's response after noting IHC failed to file its response within 10 days of the petition under section 1290.6 "[d]ue to what was apparently plaintiff's or its legal representative's mistake, inadvertence, or neglect," but "respond[ed] within nine court days of the hearing" under section 1005, subdivision (b).

Nevertheless, we find no prejudicial error based on the record before us. The most fundamental rule of appellate review is that the judgment or order challenged is presumed to be correct, and "it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564.) To overcome this presumption, an appellant must provide a record that allows for meaningful review of the challenged order. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

The hearing on the petition to confirm the arbitration award was not reported. Plaintiffs' counsel apparently was unaware of the deadline under section 1290.6 until he received Kamran's reply brief. Nothing in the record, however, shows IHC filed an application for an ex parte order extending its opposition's deadline to December 24, 2020, for good cause under section 1290.6, after it received the reply. When asked at the oral argument on appeal, plaintiffs' counsel said he did not file

30

an ex parte application because the reply had been filed only a few days before the hearing. According to the record, however, the court did not hear the petition to confirm until January 29, 2021—29 days after Kamran objected to the timeliness of IHC's opposition.[20]

Although it was not entirely clear from counsel's argument, he apparently told the trial court he didn't know he had to file IHC's response to the petition 10 days after the petition's service. Without a reporter's transcript, however, we do not know if plaintiffs' counsel asked the court to order the 10-day deadline extended for good cause under section 1290.6, or if the court simply decided his unfamiliarity with section 1290.6 was insufficient to support a finding of good cause. Whether IHC did not ask for, or was not granted, a court-ordered extension under section 1290.6, without one, IHC's response was not duly served and filed. (*Jameson v. Desta, supra*, 5 Cal.5th at p. 609 [" 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' "]; *Hearn v. Howard, supra*, 177 Cal.App.4th at pp. 1200–1201 [presuming what occurred at hearing supported judgment].) The trial court thus had no authority to consider IHC's request to vacate the arbitration award.

Plaintiffs nevertheless argue that, even if the petition's allegations were deemed admitted under section 1290, its legal conclusions were not. Citing *Taheri Law Group, A.P.C.*

---

[20]    The record shows Kamran filed—and electronically served —his objections and reply to IHC's opposition to the petition on December 31, 2020. Although originally scheduled for January 8, 2021, the court did not hear the petition until January 29, 2021.

*v. Sorokurs* (2009) 176 Cal.App.4th 956, 962, plaintiffs contend the admission of a petition's factual allegations does not require the court to grant an unopposed petition—" 'courts still have the power and duty to draw their own legal conclusions and confirm, correct, or vacate the award, or dismiss the petition, as appropriate.' " Plaintiffs fail to note the court in *Taheri Law Group* made that statement when reviewing a judgment that confirmed an arbitration award after denying an unopposed— due to an untimely response—*petition to vacate* the award. (*Id.* at pp. 959–960.) The court concluded the petition's admitted factual allegations did not establish bias, prejudice, or fraud, and the trial court correctly refused to vacate the arbitration award. (*Id.* at pp. 964–965.)

Plaintiffs contend the trial court here was not required to grant the petition to confirm and should have reviewed the *arbitration award's legal conclusions*, especially because— in plaintiffs' words—the court "itself was convinced that . . . there was fraud, corruption and over reaching [*sic*] in the rendering of the [a]ward." That evidence, however, was part of IHC's untimely response. As we have presumed IHC did not make an offer of good cause, or the court did not find good cause, to extend the filing deadline, the court had no authority to vacate the arbitration award based on evidence included in that response. (See § 1286.2 [court's vacation of arbitration award is "subject to [section] 1286.4"]; § 1286.4 ["court may not vacate award" unless petition or response requesting vacation or correction "has been duly served and filed"]; *Harris v. Sandro* (2002) 96 Cal.App.4th 1310, 1313 [court may not vacate an award unless one of the grounds enumerated in section 1286.2 exists,

" 'even if it contains a legal or factual error on its face which results in substantial injustice' "].)

Rather, "confirmation of an arbitration award 'is the mandatory outcome absent the correction or vacatur of the award or the dismissal of the petition.' " (*Law Finance Group, supra*, 67 Cal.App.5th at p. 325.) The request to vacate, and any included request for correction, was untimely.[21] (§ 1286.8, subd. (a) [court also may not correct an award unless a petition or response has been duly served and filed].) Nor have plaintiffs identified any grounds requiring dismissal of Kamran's petition. (See, e.g., § 1285.4 [providing proper form for petition to confirm

---

[21] Plaintiffs also challenge the judgment's inclusion of $154,906.50 in attorney fees based on the arbitrators' award of attorney fees and costs to Kamran as the prevailing party, in an amount to be submitted in a memorandum of costs upon confirmation of the award. The fees were part of the total $160,385.30 in costs added to the judgment per the court's May 13, 2021 order ruling on Kamran's memorandum of costs and Plaintiffs' motion to tax costs. Plaintiffs challenge the arbitrators' *authority* to award fees. Based on the parties' stipulation to conduct the arbitration under rule 3.817 et seq., plaintiffs argue the arbitrators had no authority to award any party attorney fees—that issue was reserved for the trial court to determine under rule 3.824. (See rule 3.824(a) [enumerating arbitrators' powers and providing "all other questions arising out of the case are reserved to the court"].) Plaintiffs thus ask us to reverse the trial court's order awarding Kamran attorney fees and remand the issue of his entitlement to fees to the trial court. Whether the arbitrators exceeded their authority, however, relates to IHC's request to vacate, which we have concluded the court had no authority to consider. (§§ 1286.2, subd. (a)(4) & 1286.6, subd. (b) [arbitrators exceeding their powers is ground to vacate or to correct award].)

arbitration award]; § 1287.2 [providing court shall dismiss proceeding against named respondent if respondent was not bound by arbitration award and was not a party to the arbitration]; *Law Finance Group,* at p. 325 [holding court must confirm arbitration award where request to vacate was untimely and no grounds existed to dismiss the petition].) Accordingly, the court's confirmation of the award was proper.

## DISPOSITION

The final judgment and order confirming the arbitration award is affirmed. In the interests of justice, the parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

LAVIN, Acting P. J.

ADAMS, J.*

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.